# JOHN BRAUER et al. *vs.* THE BALTIMORE REFRIGERATING AND HEATING COMPANY.

*Use of City Street by Abutting Owner—Obstruction of Sidewalk by Erection of Platform Over it For Loading Wagons—Party Suffering Special Damage From Obstruction of Highway Entitled to an Injunction—Invalidity of Permit of Board of Estimates Authorizing Erection of Permanent Obstruction in Street.*

The streets of a city are designed primarily for use by the public for the purpose of travel and transportation. A merchant or manufacturer whose place of business fronts on a street may temporarily obstruct the sidewalk in the process of loading or unloading his merchandise, provided he does not in so doing unreasonably encumber the foot-way or interfere with the reasonable enjoyment of the adjacent property. If the adjacent owner suffers special loss from an unlawful obstruction of a public sidewalk, he can maintain an action for damages, or a bill for an injunction if the nature of his damage be such as to make an injunction appropriate.

The extent of the right of an abutting owner to obstruct the sidewalk in front of his lot is not to be determined by the necessities of his business but by the public convenience. An abutting owner cannot supply the deficiencies of his own premises by taking in the highway.

Sec. 37 of the Charter of Baltimore City authorizes the Board of Estimates to grant upon such terms, as it may think proper, the right to use the streets for "bow or bay windows, hitching posts, area ways, steps, planting of trees, storm-doors, drains, or other such temporary or similar uses." *Held*, that this section does not authorize the Board to grant a permit to build a platform over a part of the sidewalk and remove the kerb and lower the grade so that wagons may be backed

up to the platform for loading, since such use of the street is neither similar to the uses enumerated in sec. 37, nor temporary in its nature; and it makes no difference that the permit was revocable at the pleasure of the Board.

Plaintiff owns two stores on E. Street in Baltimore City used for retail business. The defendant company owns the adjoining lot. The centre of E. street is at that point occupied by a railway freight track, and the side of the street opposite to plaintiff is occupied by a freight warehouse. There is on that side no foot pavement, and the only pavement for pedestrians is in front of plaintiff's and defendant's lots. Defendant, being engaged in the manufacture of ice, obtained a permit to erect upon the sidewalk of E. street, in front of its building and adjoining plaintiff's lot, a platform 3½ feet high, and 4 feet wide and 52 feet long for the purpose of loading the ice manufactured by it into wagons, and also to remove the kerb and lower the sidewalk in front of the platform so as to allow wagons to back up against it over the sidewalk. Plaintiff filed a bill alleging that the proposed platform would obstruct the use of the sidewalk, divert travel from the street, and cause special injury to him by depriving him of custom in his business. The evidence showed that the street in front of plaintiff's property is frequently congested with traffic, and that defendant company proposes to deliver ice to wagons standing on the sidewalk at the rate of 100 tons a day. *Held*, that the proposed platform and its use will exclude pedestrians from the sidewalk in front of defendant's factory and convert the same into a loading yard for ice wagons during several hours each day to such an extent as to lead pedestrians to avoid the use of that portion of the street and seek other avenues of passage; that this will cause special injury to the retail business carried on in plaintiff's buildings immediately adjoining the platform, since diversion of trade inevitably follows diversion of travel, and that plaintiff is entitled to an injunction to restrain the erection of the platform, and if the same has already been erected, the plaintiff is entitled to a mandatory injunction requiring it to be removed and the sidewalk and kerb restored to their former grade and condition.

When a defendant admits that he is about to do an act which if done would entitle the plaintiff to an injunction restraining its continuance, then the plaintiff is entitled to an injunction without waiting until the wrongful thing is actually done.

Appeal from the Circuit Court No. 2, of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*C. Dodd McFarland* and *Emil Budnitz*, for the appellants.

It is a partial closing of the street. Damages and benefits are awarded when a street is closed. Streets from side to side and end to end, belong to the public. The public are entitled to free passage along the street, and to every portion of it not occupied by some other traveller. 24 *Am. & Eng. Ency.*, 1 ed. 34.

Abutting land owners on the street have the right to load and unload merchandise and deposit building material. But the use must be temporary and reasonable. *Ibid.*, 36.

Right of access—even the Legislature cannot infringe the right, much less a municipal corporation in its legislative capacity, and much less a board of limited powers. The corporate authorities of a town have no right to appropriate the public streets to any other uses than that of travel, or right of way, to which they were dedicated, and the convenience of the whole public. They cannot lawfully obstruct them with public or private buildings. Such improper appropriation will be restrained at the suit of any one whose property is especially injured thereby. 24 *Am. & Eng. Ency.*, 1, ed. 42, note; *Lutterloh* v. *Mayor, etc., of Cedar Keys*, 15 Fla. 306.

The power to obstruct 4x52 feet, includes the power to obstruct an indefinite number of feet. A common council of a city under powers to pass ordinances to regulate or prevent the use of streets for any other purposes than public travel, has no power by ordinance to confer upon a railroad company a right to occupy exclusively twelve feet of a street by the erection thereon of a freight platform and roof. *State* v. *Mayor, etc., Jersey City*, 52 N. J. L. 55. No grant for the use of streets incompatible with the ends for which they were established, is valid. *Chapman* v. *Albany*, 10 Barb. 360.

Permission to erect the platform described in the application of the defendant, to the Board of Estimates, is beyond the powers vested by the Act of 1900, ch. 109 (sec. 37 of charter) in the board. Such a platform as will obstruct travel is not warranted. *Stack* v. *East St. Louis*, 85 Ill. 377; *Municipal Corps.*, 15 *Am. & Eng. Ency.*, 1166, 1186.

The conditions for the erection of the platform are not reasonable, as it did not award compensation to the adjoining and abutting owner.    If the act impairs vested rights of the plaintiffs, it is unconstitutional.    If the act does not impair vested rights, the order is in excess of the power granted, and therefore void. · Not only the notice, but the right to *hearing*, must be given.    *Ulman* v. *Mayor, etc.*, 72 Md. 587, 593.

The action of the Board of Estimates is not an exercise of the taxing power, which is exercised by a sovereign State, by virtue of its supreme power, but giving a valuable right to one to the loss and damage of another, without compensation or provision for compensation.    If the act of the Board of Estimates was unreasonable, it was not within the limits of its authority.    *Mayor, etc.*, v. *Johns Hopkins Hospital*, 56 Md. 1, 39.

It is the duty of the municipal authorities to preserve the streets for the use of the travelling public.    *Lake Roland Co.* v. *Baltimore*, 77 Md. 379.

The owner of a lot of ground which extends to the side of a public street, has an easement in the street for light, air and access, for the benefit of his abutting property, which constitute private property within the meaning of the constitutional provision that private property shall not be taken for public use without just compensation, nor shall it be taken for private use for any compensation whatever.    *Abendroth* v. *Manhattan R. Co.*, 122 N. Y. 1, 11 L. R. A. 634; *Van Witsen* v. *Gutman*, 79 Md. 405; *Townsend, Grace & Co.* v. *Epstein*, 93 Md. 527.

Compensation for erection of a telegraph line must be made to abutting owners, although the fee of the street is in the public, and the right, therefore, cannot be defeated by the municipal authorities.    12 L. R. A. 864.    Pipes cannot be laid in a road without compensation to owner, although County Commissioners grant right.    8 L. R. A. 602.    The cause or necessity of the act considered in construing it.    *Gill* v. *Cacy*, 49 Md. 243; *Miller* v. *Cumberland Factory*, 26 Md. 478.

No one has a right to erect works which are a nuisance to a neighboring owner and then defend by saying he has ex-

pended large sums of money in the erection of works, while the neighboring property is of little value. *Susq. Fer. Co.* v. *Malone*, 73 Md. 268.

*Robert H. Smith* and *Alfred S. Niles* (with whom was *Oscar Wolff* on the brief), for the appellee.

The Legislature cannot grant to a private person for his private benefit, a right to do an act which goes to the destruction of a street as a street; whether the grant interferes with the right of passage or with the "column of light and air" over the bed of the street, or with both. But when abutting owners make application for "privileges reasonably incidental to the enjoyment of abutting property as such," such as steps, porches, areaways, the law holds that these are part of the use of a street as a street, and, therefore, the Legislature may properly devolve upon a special board the power to grant such privileges upon reasonable terms. *Townsend* v. *Epstein*, 93 Md. 537; argument of appellant's counsel, p. 541; *Jorgenson* v. *Squires*, 144 N. Y. 280, 284; *Cushing* v. *Boston*, 122 Mass. 175; s. c., 128 Mass. 330; *Louth* v. *Thompson*, 39 Atl. Rep. 1103. See also *Garrett* v. *Janes*, 65 Md. 260.

One great advantage of owning property abutting upon a street, is the facility of ingress and egress both for persons and goods. An abutting property holder has the right to the presence of vehicles in front of his property to take away goods for such reasonable time as is necessary for his purposes. *Poole* v. *Falls Road R. R. Co.*, 88 Md. 533, 540. See also *Elliott on Streets and Roads*, 2 ed., sec. 717.

As steps and porches facilitate the ingress and egress of persons, so areaways and platforms facilitate the ingress and egress of goods, and they are all necessary to the convenient and best use of the street as a street. The right of an abutting owner to "reasonably" obstruct the sidewalk while moving heavy goods from the street to his premises is well settled; and a platform or areaway which will enable him to exercise this right, at once with more convenience to the passing pedestrians, is to the public benefit, and the increasing of the use-

fulness of the street as a street. *Jorgenson* v. *Squires*, 144 N. Y. 280; *Tomkins* v. *North Hudson River R. R. Co.*, 43 Atl. Rep. 885.

The grant of the privilege to erect the platform complained of was simply the act of a special tribunal acting within its powers lawfully granted, and from whose decision no appeal is expressly given. Its action is final and cannot be reviewed by any Court. "Where the law or charter confers upon the City Council or local legislature power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the Courts. In such case the decision of the proper corporate officers is, in the absence of fraud, final and conclusive, unless they transcend their powers. *Alberger* v. *Baltimore*, 64 Md. 6; *Consumers Ice Co.* v. *State*, 82 Md. 141; *Salisbury Assn.* v. *Wicomico County*, 86 Md. 622.

Ordinarily no injunction will be granted to restrain an injury which is not actual, but simply anticipated or feared; and this rule is only relaxed when the Court can see for itself, from the facts brought to its attention by the evidence, that the damage claimed is imminent and certain. "Where an injunction is asked to restrain the construction of works of such a nature that it is impossible for the Court to know, until they are completed and in operation, whether they will or will not constitute a nuisance, the writ will be refused." *High on Injunctions*, vol. 1, sec. 743; *Adams* v. *Michael*, 38 Md. 123; *Whalen* v. *Delashmutt*, 59 Md. 250; *Wood on Nuisances*, sec. 659; *High on Injunctions*, sec. 742; *Metropolitan Savings Bank* v. *Manion*, 87 Md. 68–80–82.

These authorities would seem to us absolutely conclusive of the case at bar. Not only do the officials of the appellee claim that the proposed platform and their use of it will create no nuisance and that it is the best method of exercising its legal right to load and unload its goods, considered as well from the standpoint of the pedestrian and the public in general as from the standpoint of its own interest; but disinterested witnesses testify to the same effect.

It must be conceded then that there is no unanimity of opinion to the effect that a "grievous nuisance" will "certainly" result.

But, in addition to this, when the Court looks at the facts it will appear that the plaintiffs' witnesses based their view of the damage which would be caused by the appellee's use of their platform upon the assumptions.  1. That the wagons would be loading at the ice factory continuously throughout the day.  2. That there would be a wagon unloading from the railroad cars on the west side continuously throughout the day.  3. That there is a great deal of wagon traffic going down Eutaw street on the west side.

Not one of these assumptions is supported by the evidence.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant owns a lot of ground on the northwest corner of Eutaw and Barre streets, in Baltimore City, fronting 25 feet on Eutaw street with a depth of 76 feet on Barre street. The appellee owns the adjoining lot on the west side of Eutaw street, on which it has a front of 104 feet to Wayne street. On Wayne street it runs west 125 or 130 feet and then extends southerly in the rear of the appellants lot to Barre street, on which it has another front of about 40 feet.

Eutaw street at this location is a wide thoroughfare running north and south and it is much travelled by vehicles and pedestrians.  A freight track of the Baltimore and Ohio Railroad runs along the centre of the street on which cars stand to receive and deliver freight from and to the warehouses on the two sides of the street.  The east side of the street contains the extensive freight warehouse of the railroad company and there is no foot pavement on that side.  The only sidewalk provided for pedestrians along this portion of Eutaw street is the one on the west side lying immediately in front of the lots affected by the transactions out of which the present controversy arises.  Wayne street is only 18 or 20 feet wide and is used almost exclusively by wagons being seldom traversed by persons on foot.  Barre street is 60 feet wide

but is not much travelled.    Neither of the last-named two streets has any railway track on it.

The appellant's lot is improved by two small stores and dwellings fronting on Eutaw street.    The appellants occupy the one at the corner as a dwelling and retail liquor store, and rent the other one to a retail tobacconist.

The appellee, having erected on its lot a large building for manufacturing ice and furnishing heat and power, applied to the Board of Estimates for a permit to erect and maintain upon the Eutaw street sidewalk, in front of that part of its building immediately adjoining the appellant's lot, a platform 3½ feet high, 4 feet wide and 52 feet long, for the purpose of loading the ice to be manufactured by it into wagons, and also to remove the kerb and lower the sidewalk in front of the platform so as to allow wagons to back up against it over the sidewalk to receive their loads of ice.    The Board of Estimates granted the permit asked for by the appellee allowing it to erect the platform and remove the kerb and pavement from the sidewalk and the street in front of it and replace them by an uniform pavement of vitrified brick so as to permit of the unobstructed approach by wagons from the bed of the street over the sidewalk to the platform.

The appellants thereupon filed the bill in this case in Circuit Court No. 2, of Baltimore City, asserting that the erection and use of the proposed platform by the appellee would greatly obstruct and endanger the public use of the sidewalk and divert travel therefrom; and would also cause irreparable injury to the plaintiffs by depriving them and their tenants of the custom and patronage which they now enjoy or can reasonably expect to secure from persons using the sidewalk on that part of Eutaw street.    The bill also alleges that by reason of the location of the plaintiffs' property and the nature of the business conducted therein they will suffer an especial loss, different from that sustained by the public generally, from the defendants proposed action and prays for an injunction to prevent the erection of the platform and lowering of the sidewalk by the defendant.

The Court granted a preliminary injunction on the filing of the bill, but upon the coming in of an answer and the taking of testimony it passed a final decree, dissolving the injunction and dismissing the bill, from which this appeal was taken.

It appears from the testimony of Mr. Tough the general manager of the appellee, who testified on its behalf, that it has primarily with a view to its own interest and advantage, but also with a view to causing the least interruption to travel arranged to so construct its building as to deliver its entire output of ice over the proposed platform to wagons standing on the sidewalk backed up against it, and that it may also use the platform for handling coal. It further appears from the testimony of the same witness that the appellee intends to manufacture about 100 tons of ice per day which will fill 100 one-horse wagons or 50 two-horse wagons and that it will require eight minutes to load and start each wagon; also that a horse and wagon backed up against the platform would extend across the entire sidewalk, but if the horse or horses were turned at right angles to the wagon there would be a space of about two feet along the outside of the place formerely occupied by the sidewalk on which pedestrians might pass without actually going into the bed of the street.

Mr. Tough also stated, both before the Board of Estimates and when testifying in the case, that the bulk of deliveries of ice over the proposed platform were expected to be made between the hours of 2 and 6 A. M., but upon the appellant's counsel offering, when before the Board of Estimates, to withdraw all objections to the issue of the permit if upon its face it restricted the use of the platform to those hours, the appellee declined to accept the permit in that form. This witness admitted in his testimony that ice would be delivered to customers whenever they called for it and there was other evidence in the case which satisfies us that the demand for ice would not be limited to that short portion of the day.

There is evidence in the record of witnesses who say that they have frequently seen the street in front of the property now under consideration crowded with wagons and that at

times a congestion of traffic occurs there.   It also appears from the evidence that meat packing establishments in the neighborhood use an overhead steel trolley arrangement, for conveying their meat across the sidewalk from the bed of the street to the warehouses, which does not seriously interfere with the use of the sidewalk by pedestrians.

The Courts have frequently been called upon to consider the legal propositions controlling the use of public streets. The cases upon the subject agree that the fundamental right to their enjoyment is that of the general public for passage over and along them.   In the exercise of this right persons employing vehicles are primarily entitled to occupy the bed of the street while pedestrians have a similar priority of claim upon the sidewalk.

The owners of lots abutting on streets are permitted to encroach to a limited extent, for the necessary transaction of their business upon this primary right of the public provided they do not unreasonably interfere with its exercise.   But it must always be borne in mind that the right of the public to employ the streets for purposes of travel and transportation is the paramount one and that of the abutter to occupy them for other purposes is a permissive and subordinate one.   *Rex* v. *Russell*, 6 East. 427; *Rex* v. *Jones*, 3 Campbell, 230; *Callanan* v. *Gilman*, 107 N. Y. 360; *Flynn* v. *Taylor*, 127 N. Y. 596, (14 L. R. A. 556); *Halsey* v. *Rapid Transit Co.*, 47 N. J. Eq. 380; *Davis* v. *City of Corry*, 154 Pa. 602; *Elliott on Roads*, sec. 20; *Lake Roland Elevated R. R. Co.* v. *Baltimore*, 77 Md. 379.

A merchant or manufacturer whose place of business abuts on the street of a populous city may temporarily obstruct the sidewalk in front of his building in the process of loading or unloading his merchandise or the product of his factory provided he does not in so doing unreasonably encumber the footway or interfere with the reasonable use and enjoyment of the adjacent property.   But if the adjacent owner suffer special or peculiar loss from an unlawful obstruction to a public sidewalk he can maintain a suit for damages or file a bill for

an injunction if the nature of his damage be such as to make the latter form of action appropriate.   *Flynn* v. *Taylor, supra; Callanan* v. *Gilman, supra.*

The extent of the right of the abutting owner to obstruct the sidewalk in front of his establishment is not to be determined by the necessities of his business but by the public convenience and the reasonable enjoyment by adjacent owners of their property.

In *Flynn* v. *Taylor,* where the suit was brought by the owner of adjacent property against the defendant for obstructing the sidewalk, in front of a saleratus factory owned by the latter, by having trucks stand across it for several hours each day to load and unload, the Court say "While the defendant was doubtless careful to interfere with the rights of the public no more than was necessary for the convenient transaction of his business with the facilities he had he could not lawfully supply the defects in his premises by virtually monopolizing the sidewalk for several hours every day.   As the Court said in *Rex* v. *Russell,* 6 East. 427, he 'could not legally carry on any part of his business in the public street to the annoyance of the public.'   Nor could he 'eke out the inconvenience of his own premises by taking in the public highway.'   *Rex* v. *Jones,* 3 Campbell, 230.   Whether a particular use of a public street is a reasonable use or not is a question of fact depending on all the circumstances of the case.   *   *   *   While general welfare is promoted by manufactories such as the defendant carries on and they should not be interfered with for light or trivial causes, still the right of the public to the use of the sidewalk is paramount and he must so arrange his business as not unreasonably to interfere with it."

In the *Lake Roland Elevated R. R. Co.* v. *Baltimore, supra,* this Court, in úpholding the action of the city of Baltimore in requiring the removal of one of two street railway tracks, which had been laid with its consent, because it interfered with the reasonable and convenient use of the street by the public, said: "The control of the city over its streets is attended with the duty of preserving them for their legitimate purposes.

They are intended for the passage of the people over them on foot, on horseback and in vehicles on their occasions of business, convenience and pleasure. It is not competent for the city to defeat the primary purposes for which they were dedicated to the public use. They are highways and must be maintained as highways as long as they are kept in existence.''

Let us now consider, in the light of these principles, whether the use which the defendant intends to make of the sidewalk in front of its factory is a reasonable one. In the first place its proposed platform three and a half feet high, will occupy 208 square feet of the public sidewalk from which pedestrians will be excluded as effectually as if the building itself were extended to cover that much of the pavement. In the next place the kerbing will be removed and the sidewalk itself will be materially changed for the distance of $52\frac{1}{2}$ feet. It is well known that sidewalks are elevated above the bed of the street and supported along their outer side by kerbing in order to protect those using them from the encroachment of vehicles and from the dirt and filth which accumulate on the bed of the street by reason of the uses to which it is applied as well as from the water which, especially during rains, accumulates in and flows down the gutters lying next to the sidewalk.

The nature and extent of the appellee's intended use of the platform and sidewalk for its private purposes in handling the product of its factory makes it apparent that, even with the use of such skill and expedition as it can reasonably expect to secure from its employees in that connection, the sidewalk in front of the factory will be practically turned into a loading yard for ice wagons during several hours of each day. It is evident that this intended use of the sidewalk will not only obstruct passage over it but will defile its surface with the droppings from the horses and the drippings from the ice wagons especially in warm weather to such an extent as to lead pedestrians to avoid the use of that portion of the street and seek other avenues of passage. That this will cause especial damage and injury to the retail business carried on in the

plaintiff's building immediately adjoining the platform is too plain for controversy. As was said by the Court in *Flynn* v. *Taylor, supra*, "diversion of trade inevitably follows diversion of travel."

While fully recognizing the wisdom and the importance to municipal prosperity of pursuing a liberal policy toward manfacturing enterprizes in order to promote their growth, we do not think that the appellee should be permitted to erect or maintain this platform upon the pavement in front of its premises or to obliterate for its own convenience so considerable a portion of the sidewalk dedicated by condemnation to public use. This platform is intended to provide greater room for handling the ice and its erection will in effect constitute an extension of the first floor of the factory over a considerable part of the sidewalk. The use to which the appellee admits that it proposes to put the balance of the sidewalk for some hours in each day would amount to a practical conversion of it while being so used to a part of the factory premises. The appellee in proposing to operate a factory turning out a bulky product requiring the daily use of many wagons for its delivery comes fairly within the operation of the principle announced in *Rex* v. *Russell, supra*, where it was said "That if the nature of the defendants business were such as to require the loading of so many more of his wagons than could be conveniently contained within his own private premises he must either enlarge his premises or remove his business to some more convenient spot." The appellee's premises front for at least 125 feet on Wayne street which is unused by pedestrians and also 45 feet on Barre street. By a judicious use of this frontage together with such enlargement of its premises as the extensive delivery of its product may require it can, at the cost perhaps of some inconvenience to itself, transact its business without unreasonable interference with the use by the public of any of the streets.

The permission of the Board of Estimates relied on by the appellee for its proposed occupation and use of the sidewalk in question can afford it no protection. The Charter of Balti-

more, secs. 7 to 11 inclusive, contains specific provisions for granting any rights or franchises in or to its public streets for which it requires the concurrent action of the Mayor and the City Council with the co-operation of the Board of Estimates. It is admitted that no such action was taken in this case. The appellee sets up a mere permit from the Board of Estimates issued in exercise of powers supposed to have been conferred on it by sec. 37 of the city charter. That section authorizes the Board of Estimates to grant for such price and upon such terms as it may think proper the right to use the streets for "bow or bay windows, hitching posts, area ways, steps, planting of trees, storm doors, drains and drain pipes or other such *temporary* or *similar uses*" after first serving copies of the applications therefor upon the adjoining property owners. That section does not in our opinion confer either in express terms or by fair implication upon the Board the power to grant permits for the uses here proposed to be made of the sidewalk by the appellee which are neither similar to those enumerated in sec. 37, nor temporary in their nature. A temporary use of a street is one which from its character will not be of long duration, such for instance as depositing thereon materials for buildings in process of construction or repair, or the erection of a scaffold or other transient structure thereon. The obstruction and use of the sidewalk for private purposes here intended to be made by the appellee appear from the face of the record to be systematic and continuous in their nature.

Nor does the fact that the permit granted to the appellee by the Board of Estimates was by its terms revocable at the discretion of the board alter the quality of the acts to be done under it. The nature of the acts to be done remains the same although the supposed authority to do them be defeasible in its terms. The contents of secs. 7 to 11 of the city charter, regulating the granting of franchises in property held by the municipality for public purposes, excludes the view that the Legislature in enacting that instrument intended to confer upon any subordinate municipal boards or officials power to grant important franchises affecting public streets or property.

It would not be competent for the municipality itself to confer authority upon any private person to employ the public streets in any enterprise or occupation which would defeat the primary purposes for which they were dedicated to public use.

As the appellee does not deny its intention to construct the platform and make the changes in the grade and pavement of the sidewalk and to deliver ice from the platform to wagons standing on the sidewalk at the rate of 100 tons per day the appellants are entitled to their injunction without waiting until the actual commission of those acts.

The decree appealed from will be reversed and the case remanded to the end that an injunction may be issued restraining the appellee from erecting the platform or removing the kerb from the sidewalk or changing the grade of the latter. If the appellee has already erected the platform or made the proposed changes or any of them in the kerb and sidewalk the Circuit Court is directed upon a proper amendment of the bill to require it by mandatory injunction to remove by some specified day the platform and restore the kerb and sidewalk to the grade and condition in which they were at the time of the filing of the bill.

> *Decree reversed with costs and cause remanded for further proceedings in accordance with this opinion.*

(Decided June 8th, 1904.)