### GILBERT et, Plaintiffs-Appellants v. DAYTON (City), Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 1783. Decided March 13, 1944.

194

Routzohn & Nevin, Dayton, for plaintiffs-appellants.
Herbert S. Beane, City Atty., Dayton, M. J. Gilbert, Asst. City Atty., Dayton, for defendant-appellee.

## OPINION

By BARNES, P. J.

The above entitled case is now being determined de novo by reason of plaintiff-appellants' appeal on question of law and fact from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

By stipulation of counsel it was agreed that the transcript of the evidence taken before the trial court shall be an agreed statement of facts for our Court and that all errors and irregularities therein, if any there be, and any objections thereto of whatever nature are waived.

At the time of the oral argument, it was stipulated that either party might have the privilege of presenting any other or further evidence which either side felt was pertinent and germane to the issues. Counsel for appellant have availed themselves of this privilege and there is added additional evidence in the nature of excerpts from the minutes of Council of certain months of 1864, 1865 and also an Ordinance dated March 27, 1868.

Plaintiffs' action sought a declaratory judgment and the quieting of title to a particularly described piece of real estate within the city of Dayton. The plaintiffs, Edwin Dean Gilbert and Helen Gilbert Kissinger were sole heirs and distributees of Paul E. Gilbert, deceased, and by reason thereof claim to be entitled to all interest, in the particular property described and held by their father. The chain of title as set out in the petition extended back to July 13, 1865 when Valentine Winters, the then owner, conveyed to the City of Dayton by duly executed warranty deeds, the identical property referred to in the action as belonging to plaintiffs and additional property located in the same territory. The deed from Valentine Winters to the City of Dayton stipulated a consideration of $2500.00, conveyed absolute fee but there was no recital in the deed of the purpose for which said property was being conveyed.

The principle of law is well recognized and in general is controlled by statute, that municipalities, for certain purposes, may acquire, own and hold real estate and the statutory law also provides that where said real estate is held rightfully that it may be conveyed away by the city.

A municipality does not have the right to acquire real estate for investment purposes or for the purpose of joining with other individuals or entities in the furtherance of some business enterprise.

Counsel for plaintiff have made a very exhaustive effort in

their search of the minutes and Ordinances of the Dayton City Council, old recorded city plats and historical data copied from old newspapers, making reference to the situations and conditions relative to the real estate now involved in this litigation. The particular property involved in this case, in its early days, was known as the Seeley Ditch.

From the old newspaper articles we learn that, in fact, it was constructed for about one mile in length as a canal intending to connect up with the Lake Erie Canal. Mr. Seeley, who owned all the surrounding properties, ran out of funds and the project stopped. He sought help from the state through special enactments of the legislature but was not successful in securing the necessary legislation. Later, through some methods, the ditch in part was used for water power purposes. Other parts became stagnant "goose ponds".

Conditions finally became so bad that the stagnant water in the ditch was generally recognized as a nuisance and on appeal was made to the City and to the State for relief. Both the State and City denied that they had any jurisdiction.

Finally the citizens were co incensed that they gathered as a mob and proceeded to fill up the ditch in order to obviate the threatened injurious health condition. All this took place before 1865. The ditch was not entirely closed up and thereafter for a long time was still known as the Seeley Ditch. In 1864, numerous petitions were presented to Council asking that a market house be constructed in what apparently was the location referred to in the instant action. This is known from the minutes of Council. This was before the city acquired the property from Valentine Winters. On May 2, 1874, the City of Dayton, by an instrument designated as a lease and recorded in the lease records of Montgomery County, Ohio, leased the premises which they had acquired from Valentine Winters to one Jacob Clemens to continue for a term so long as certain conditions and stipulations set forth in said instrument were complied with.

The stipulations and conditions which were the only consideration mentioned in the lease were as follows:

"In consideration whereof said Jacob Clemens for himself, successors and assigns, hereby agrees and convenants with said City its successors and assigns forever, to erect on said premises within six months from this date a substantial two story brick building with fire proof roof and otherwise properly protected fronting on Fifth Street, of the width of said land, forty feet,

be the same more or less, and sixty feet in length with an extension of twenty feet for engine room etc. said building to be used by said Clemens for the purpose of a planing mill, and a sash, blind and door factory. Said Clemens further agrees to erect place and maintain said building and improvements on said premises so as not to impede the free flow of water in the City ditch thereon, to keep said ditch within the limits leased, clean and clear of dirt or other obstructions so that said ditch shall be and remain not less than eighteen feet in width and two feet in the clear above the paving at the side of said ditch. All of said provisions for the protection of said ditch, and the free use thereof to be carried out and maintained to the satisfaction and approval of the City Civil Engineer of which his written report to the City Council shall be the only evidence.

A manufacturing business and no other to be maintained and actively carried on upon said premises, the same not to be sub-let, assigned, or leased in any part without the written consent of said lessor, which reserves the right through its proper officers to enter upon and view said premises at any time.

Said premises when improved as aforesaid shall be appraised as if a fee by the appraiser of said ward and placed upon the tax duplicate, and the lessee agrees to pay the taxes and assessments thereon hereafter the same as though he owned the land in fee simple."

The minutes of the Council under the same date and previous, indicate that the City was seeking to donate the property in question to someone who would erect suitable buildings for manufacturing purposes.

There was newspaper prominence given to this action by the City Council and it was sought to sell the public upon the idea that it would be very helpful to the City generally if manufacturing concerns could be started along the site of this old Seeley Ditch. All the necessary legislation was carried through the Council to the point that a proposition was obtained from Mr. Clemens and the proper officials ordered to execute the lease. It must be kept in mind that this action by the City Council was some nine years after its acquisition of the premises. The legislation of the City Council and the newspaper articles indicated that the plan to donate the property for manufacturing purposes was a new thought and nowhere is it indicated that such action was the continuance of an original plan in the mind of the City Council when they acquired the property.

As heretofore stated, the exhaustive research of counsel, while not entirely for the purpose of ascertaining the use to which the city was to put this property, yet we find nothing, covering historical facts of many years, that throws any light as to the city's purpose in acquiring the property and the use to which it was to be put. In the city's answer it is averred that the city acquired the premises in question, together with a large parcel of contiguous property for street and sewer purposes. No evidence supports this averment.

Of course, in the absence of a showing to the contrary, a presumption must arise that the city's acquisition of the premises in question was authorized under the law and that it was for some legitimate purpose prescribed in the statute.

The immediate use to which the property was being put in the absence of any other evidence would strongly support the question of intent. So far as we can discover from a careful search of the record, no use was made of this property for a period of nine years. This strongly indicates that whatever the purpose may have been back in 1865, it was abandoned before 1874 when the lease was made to Mr. Clemens.

In September, 1883, Mr. Clemens petitioned the City Council, praying for modification of the original instrument of conveyance reciting that the true intention of the parties was not expressed and further reciting particular corrections to be made. The Council granted the prayer of this petition and ordered a new lease executed for the purpose of making the corrections as set forth in the petition.

This instrument is not important for the reason that it adds nothing to nor takes anything from the issuable questions that are presented. During this same year, Mr. Jacob Clemens, together with his wife, granted and conveyed to Philip E. Gilbert, his heirs and assigns forever, the real estate heretofore referred to. Plaintiffs, in their petition, alleged that all conditions of the lease have been complied with and are being complied with from year to year as the situation arises.

There is no allegation in the petition making the claim that either the plaintiffs or their predecessors in title have at any time been molested in their possession or use of the premises in question. The original lease made by the City to Mr. Clemens contained a provision that in the event of transfer or sale, consent of the City would be first obtained.

This procedure was followed when the transfer was made from Mr. Clemens to Mr. Gilbert and the City duly executed an instrument of consent.

The plaintiffs bring this action for declaratory judgment

under the provisions of §§12102-1 to 12102-16 GC inclusive. From the allegations of the petition we do not find it very clear as to the type of title which plaintiffs claim to hold. The defendant in its answer seems to understand that plaintiff is claiming a fee simple title. If this be correct, the apparent theory of plaintiff is that under the law that the city had no right to acquire the property and that the deed of conveyance from Valentine Winters to the city was therefore null and void; that even if the city held no title which it had a right to convey then the sole object and purpose of the instrument of lease had been complied with and that the continuing obligation to keep the ditch open and repaired no longer exists for the reason that the city has constructed a four and one half foot sewer along the ditch so as to do away with any necessity for a continuance of the old Seeley Ditch; that under the first proposition that the city had no authority to acquire the premises in question; that the plaintiff's right later arose on prescription and its claim that under the statute of limitations the plaintiff held a fee simple title by reason of adverse possession as against the Valentine Winters heirs.

We have no difficulty in determining that the question of adverse possession is not present in this case for at least two reasons.

First, neither Valentine Winters nor his heirs are parties to this litigation and hence no order could be made affecting any interest that they might have in the premises. Second, the pleading and the evidence conclusively show that plaintiffs and their predecessors have possession and hold exclusively under the instruments purporting to transfer interest in the premises. Jacob Clemens could not convey to Mr. Philip E. Gilbert any greater interest than he possessed and the heirs of Philip E. Gilbert could not inherit any greater interest than was owned by their father.

A well recognized, general principle of the law is that a lessee may not question the title of his lessor. O. Jur. Vol. 24, §§145-146, p 869. This principle has its exceptions but none that is applicable to the situation in the instant case.

Any infirmity in the defendant's title would be passed on to the plaintiffs. In other words, they cannot make the claim that a defective title of their grantor would bring into existence a good title in them. One of the provisions attending an action for declaratory judgment is that there must be an existing dispute in order to invoke the aid of the court. Counsel for both parties apparently recognized this for it is so alleged in the petition denied in the answer.

It is our conclusion that this case can at once be determined upon the ground that there was no justiciable dispute between the parties.

It does appear from the evidence that at the present plaintiff was considering a trade or sale of the premises in question. The prospective purchaser employed attorneys to examine the title. These attorneys reported to the plaintiffs that a fee simple title could not be acquired unless the city would make a conveyance of its reversionary interest. The attorney making the examination addressed a letter to the City Solicitor making suggestions as to the plan through which the city might convey its interest. The City Solicitor conveyed the information to the examining attorney that he had taken the matter up with the City Manager and that the city would not be interested in making any conveyance at this time. The defendant also presents evidence that one of the attorneys for plaintiff contacted the City Solictor and there was conversation between them as to the nature of the plaintiff's title. The evidence is uncontradicted that the City Solicitor advised that he knew nothing about the title except as he obtained the information from the attorney examiner. The City Solicitor further expressed doubt as to whether or not plaintiffs had any interest other than a permissive right of occupancy. The interview ended with the Solicitor saying to counsel that he would be very glad to take up the matter and discuss it further under a full understanding of plaintiffs' theory of the law and factual conditions. The authority for giving consent to transfer of premises by plaintiffs was directly provided in the instrument of lease and therein it says that the lessor has exclusive right to grant consent for transfer.

Of course, the lessor was the City of Dayton and the proper officials of the City of Dayton would be the City Council. So far as the record shows plaintiff made no effort to petition the Council for its consent. Considering the record in its entirety there is absence of any showing of any controversy warranting an action for declaratory judgment.

While feeling very sure of our position as to a proper ground for dismissing plaintiff's petition, yet if, by any possibility we should be wrong in this conclusion, we go further on the question of plaintiff's title. It is our conclusion that plaintiffs' title descends from the lease executed by the City of Dayton to Jacob Clemens. Regardless of the character or nature of subsequent instruments none can enlarge the character and extent of title transferred in the lease of May 2, 1874. We doubt if the question is very important but we

would designate the instrument as a lease rather than a determinable fee. We think this is an appropriate finding for the reason that the instrument itself in no less than eight different places speaks of the instrument as a lease. It was recorded in the lease records of Montgomery County. Since its execution, the then lessees and their successors have recognized their title was a lease-hold until the bringing of the present action.

The case of **Markley v Mineral City 58 Oh St 430,** is cited by defendant as determinative of the instant action. We are inclined to the view that there are certain factual situations in the instant case through which the Markley case may be distinguished.

In the reported case it appears that the Village of Mineral City conveyed a tract of land to Markley as a donation or upon a questionable consideration that Markley would construct and operate a manufacturing business on the premises described. Five years later the village brought an action to recover the premises from Markley and alleged in its petition a number of grounds, among which was that the village had no authority under the law to make the conveyance. Issues were joined and the case came for trial. The trial court found for the plaintiff village and this judgment was sustained by the Circuit Court. The Supreme Court reversed. The Supreme Court found that the conveyance of the property was improper and unlawful but denied any relief, because the village was a party to the unlawful contract. The legal principles can be best presented by copying syllabii 1, 2 and 3.

1. A municipal corporation is without capacty to acquire land by purchase for the purpose of donating the same to a corporation or persons as an inducement to build and operate manufacturing plants within the municipality.

2. Corporate funds paid out in the attempted purchase of land for such purpose are unlawfully expended, and a deed purporting to convey such land is without legal effect.

3. And where, for the purpose stated, a village has undertaken to purchase and acquire title to land and to convey it to a person on consideration that he will build and operate manufacturies within the village, and afterwards brings its action against such person to set aside the conveyance and obtain a reconveyance of the property, with possession thereof, a court of equity will not lend its aid to either party, but will leave them where they have placed themselves.

In the instant case the evidence does not support the theory that the City of Dayton acquired the property from

202

Valentine Winters for the purpose of donating for manufac-
turing purposes. As heretofore stated we are not able to de-
termine the purpose for which the tract was purchased.

We must assume, unless there is evidence to the contrary,
that the purpose was one recognized under the law. What-
ever the purpose it is inferable that it was abandoned and the
plan to donate for manufacturing purposes was a new idea
presenting itself some nine years after the acquisition of the
property. It is our conclusion that under the facts of the
instant case the city of Dayton would have the right to dis-
pose of the property although it would not have the right to
give it away. This principle of law would apply regardless of
the purpose for which the tract of land was acquired. In
the minutes of Council there is an indication that the city
was desirous of donating the property if any individual or
entity would obligate themselves to build and operate a
manufacturing plant.

It is our conclusion that the executed lease contained
obligations to be performed by the lessee which would consti-
tute a valuable consideration and would remove the theory
of gift. This provision of the lease is copied in full at an
earlier page in this opinion and need not be repeated at this
time. The obligation to keep the ditch open, clean and clear
of dirt or other obstructions so as to admit a free flow of
water to a width of eighteen feet and two feet in the clear
above the paving at the side of the ditch would constitute a
partial consideration for the lease. Likewise, the obligation
to have the premises appraised, placed upon the tax duplicate,
and thereafter the lessee pay taxes thereon the same as
though he owned the property in fee simple, would be an
additional consideration. The obligation to erect a two story
fire proof brick building for the installment of a manufactur-
ing business and continue the same would be an incidental
advantage even though it might not be considered as basic
consideration. Counsel for the city refer to a section of the
Code and the date of the enactment wherein it was provid-
ed that a municipality may only dispose of property after ad-
vertising for bids, etc.

This statutory enactment (Section 2673 R.S.—now §3699
GC) was not in existence when the city executed its first
lease to Clemens. The first enactment appeared prior to
1883 when the instrument correcting the original lease was
executed. The statutory provisions for advertising for bids,
etc. would not be operative as to the instrument where the

sole purpose was to correct the lease executed in 1874. On the question of sufficiency of consideration we make reference to the case of **Newton, et al. v Board of Commissioners of Mahoning County, 26 Oh St 618.** This case presented the historical background of the removal of the county seat of Mahoning County from Canfield to Youngstown. One of the conditions essential to the moving of the county seat from Canfield to Youngstown was the procuring of a site for a court house and county jail. Within the limits of the territory selected were two lots owned by the city of Youngstown. These two lots were conveyed and the consideration named was $10.00. The Supreme Court in the opinion discussed the question of donation. It determined that the consideration of $10.00 was a valuable consideration and while not adequate on the basis of real value, yet would support.

Coming now to determine the judgment we find that there is no justiciable dispute between the parties to this action and for that reason alone plaintiffs' petition must be dismissed.

If the answer of the defendant can under any theory be considered as admitting or raising a question of dispute, then we would determine that defendant's averments in its answer that plaintiff has nothing more than a permissive right, is not established; that plaintiff's title is that of lessee and subject to all the conditions and obligations placed against the lessee under the original lease from the city to Clemens; the claim of plaintiffs that their holding is adverse possession would be denied. The term of the leasehold is determinative and will continue indefinitely so long as the conditions are complied with.

Costs of the action will be adjudged against the plaintiffs.

HORNBECK and GEIGER, JJ. concur