PATUXENT OIL COMPANY, INC. *v.* COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY

[No. 131, October Term, 1956.]

544

*Decided March 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William J. McWilliams,* with whom were *McWilliams, Evans & Melvin,* on the brief, for appellant.

*Marvin I. Anderson,* with whom was *Malcolm B. Smith,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The Patuxent Oil Company, Inc., (Patuxent) filed a bill of complaint in the equity court in which it requested the Court to declare its rights with respect to the use of a pipe line under a public landing or wharf in Anne Arundel County and, as well, the rights and powers of the county with respect thereto. This appeal is from a decree which sustained a demurrer to, and dismissed, the bill, without leave to amend.

The bill of complaint alleged in substance: That in 1924, the Standard Oil Co. (Standard) erected tanks for the storage of liquid petroleum products on its property located in Galesville and installed a pipe line from that property to the end of a public wharf, owned and maintained by the county, which extended into the waters of West River; that for many years thereafter, oil was delivered to its said tanks by marine tankers that tied up to the wharf, the oil then being pumped through the pipe line to the storage tanks; that for the privilege of placing the pipe line under the wharf, Standard paid the county $260.00 annually; that in 1938, Standard sold its property, including the pipe line, to Patuxent, which continued the same method of operation until some time after World War II, when the deliveries by marine tankers were discontinued and changed to deliveries by motor tankers; that Patuxent decided to reactivate the pipe line and discovered it needed repairs; that it applied to the county commissioners for, and obtained from them, a permit to make the repairs where the pipe line ran over land but not within the State's right of way (In this permit, Patuxent's agent was instructed that under no circumstances "shall the pipes be continued or connected to the existing pipe or new pipes extended on the County wharf" until after a written agreement relative thereto had been signed by the commissioners and Patuxent) ; that shortly after the issuance of this permit, Patuxent attempted to negotiate the terms of an agreement with the county for the replacement of the pipe line under the public wharf; that its counsel consulted with "representatives"

of the county and a monthly payment of $50.00 was agreed upon; that at a meeting of the commissioners held on March 29, 1955, the county's counsel advised them that Ch. 711 of the Acts of 1953 was applicable and no agreement could be entered into unless the advertising requirements were complied with; that at a meeting held two days later Patuxent's counsel requested the commissioners to give further consideration to the matter and he was requested to submit a proposal in writing and the county's counsel was directed to render a written opinion thereon; that Patuxent's counsel submitted the written proposal to the effect that the commissioners authorize Patuxent "to make use" of the oil pipes under the wharf for a period of five years (with an option to renew for an additional five year period) for $50.00 per month (this proposal contained other provisions not immediately important and the further statement that the quantity of oil to be unloaded was not certain); that the county's counsel rendered his written opinion which was to the effect that the county had no authority to *lease* public property unless the commissioners deemed it no longer needed for public use; that the commissioners thereafter again considered the matter and by unanimous action decided to be governed by the advice of their counsel; that shortly thereafter this suit was instituted.

The bill of complaint then prays for the following relief:

> "1. That the Plaintiff, in common with other members of the public, may be declared to be entitled to make any reasonable use of the public landing at Galesville which does not unreasonably interfere with the rights of other members of the public who are entitled and have occasion to use the landing for the purposes for which it was designed.
>
> 2. That the Plaintiff may be declared to be entitled to use the pipe line under said public landing for the purpose of transferring oil from boats to its plant.
>
> 3. That the right vel non of the County to exact payments from the Plaintiff may be determined and,

if such a right is found to exist, the reasonable limits of said charge.

4. That the Plaintiff may have such other and further relief as its case may require."

The powers of the Courts in this State to declare "rights, status, and other legal relations" are contained in Secs. 1, 2, 3, 4, 5, 6, 7 and 8 of Art. 31A of the Code (1951); and Sec. 12 provides that said Article shall be liberally construed and administered. As a result of several decisions of this Court that held that a proceeding for a declaratory judgment was inappropriate when there existed an immediate cause of action between the parties for which one of the common remedies at law or in equity was adequate and available, the Declaratory Judgments Act was repealed and re-enacted in 1945.

Before and after 1945 in this State, it consistently has been held that in order to invoke the jurisdiction of the Courts for declaratory relief, there must be a justiciable issue or controversy; and, insofar as we have been informed, it is universally so held. A concise definition of what constitutes a justiciable issue or controversy is given by *Anderson* in his *Actions for Declaratory Judgments,* Vol. 1, par. 17: "A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." See also *Tanner v. McKeldin,* 202 Md. 569, 576, 577, 97 A. 2d 449; *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 53, 54, 106 A. 2d 103. As the Chancellor sustained a demurrer to the bill of complaint, we must examine the facts alleged therein together with the exhibits and the decisions of this Court to determine whether any one or more of the prayers for relief should have been granted.

## I

We shall consider the prayers, above quoted in full, *seriatim* as (1), (2), (3) and (4). With reference to (1), this Court has set forth the manner in which the public highways, wharves and sidewalks may be used by individuals. Among the cases dealing with the same are: *Brauer v. Refrig. Co.,* 99 Md. 367, 376, 58 A. 21 (streets and sidewalks); *Maxa v.*

*County Commrs.,* 158 Md. 229, 231, 148 A. 214 (wharves) ; *Parlett, etc. v. Tidewater Lines,* 164 Md. 405, 416, 165 A. 313 (highways) ; *State v. Potomac Edison Co.,* 166 Md. 138, 144, 170 A. 568 (highways). It is obvious this prayer simply requests a declaration of an abstract proposition of law. There is no allegation in the bill or exhibits that claims any denial by the defendants of any such rights in the plaintiffs. As a matter of fact, it seems to be conceded in the record and likewise was conceded during argument that no claim is made or has been made that the plaintiff does not have the same rights in common with all other members of the public with reference to the use of the wharf. This Court has decided: That the Courts will not decide abstract propositions, either under the Declaratory Judgments Act or any other procedure, *Davis v. State,* 183 Md. 385, 390, 37 A. 2d 880; that the Declaratory Judgments Act should not be used in an attempt to use the Courts simply to give legal advice or for answering questions as to which no reasonable doubt could exist, *Staley v. Safe Dep. & Tr. Co.,* 189 Md. 447, 457, 56 A. 2d 144; and, when this jurisdiction is invoked, there must be an actual and justiciable controversy and the facts showing the same must be alleged, *Tanner v. McKeldin,* 202 Md. 569, 578, 97 A. 2d 449. We are unable to discover a proper justiciable controversy in relation to this prayer. Cf. *Gilbert v. Dayton* (Ohio App.), 59 N. E. 2d 954, 957, 958.

II

With reference to (2), this prayer seems to come closer to raising a justiciable issue than any of the others; but, here too, we find much lacking. It seems fair to conclude from the allegations of the bill of complaint (although somewhat vague in nature and lacking in details), which were admitted for the purposes of the demurrer, that the former county commissioners had granted to Standard a revocable license to erect and use the pipe line under the public wharf for the purpose of transferring oil from the marine tankers to its storage tanks, for a periodic stipend, and this revocable license was continued in Patuxent when it purchased from Standard. We think the county commissioners had the power and the authority to grant the same. They had the supervision and control of the public

landing, and it was their duty to conserve, maintain and defend the rights of the public to the free and unincumbered enjoyment thereof. *Maxa v. County Commrs.*, 158 Md. 229, 233, 148 A. 214. If, in their judgment and discretion, the public use and enjoyment of said wharf would not be impaired, or, perhaps, better be served, and the traffic and congestion thereon probably could be relieved, by their granting a revocable license to a corporation that had the right, together with the public at large, to use the same, we think the granting of such a revocable license would be among their implied powers as a municipal corporation. *Rushe v. Hyattsville*, 116 Md. 122, 126, 81 A. 278; *Howard Cty. v. Matthews*, 146 Md. 553, 561, 127 A. 118; *Co. Commrs. v. Supervisors of Elect.*, 192 Md. 196, 211, 63 A. 2d 735; *Montgomery County v. Met. District*, 202 Md. 293, 306, 96 A. 2d 353. Even with this determination, does the record disclose a justiciable controversy with reference to the prayer now being considered? The above mentioned revocable license was terminated and apparently abandoned by Patuxent and no request for a renewal thereof is disclosed. The Commissioners notified Patuxent not to replace, or connect to, the old pipes under the wharf until an agreement between the parties was signed. The written proposal to the Commissioners from Patuxent suggests that Patuxent be authorized "to make use" of the oil pipes under the wharf for a period of *five* years, with the option to renew for another *five* years, upon the payment of $50.00 monthly. Not only was there no attempt to renew this revocable license, but the bill alleges: "Shortly after the issuance of the permit Plaintiff (Patuxent) endeavored to negotiate the terms of the agreement with the County for the *replacement* of the pipe line under the public wharf. * * *"

At this point, several things seem obvious. The commissioners, being charged with the supervision and control of the wharf, *Maxa v. County Commrs., supra,* Patuxent has no right to erect or maintain permanent fixtures thereon without the permission of the commissioners. Whether or not this permission is forthcoming calls for the judgment and discretion of the commissioners, which will not be reviewed by the Courts (subject always to the conditions that the actions of the

commissioners must not be arbitrary nor tainted with fraud or collusion). As far as the record discloses, the commissioners simply did not accept the written proposal. It seems to have been conceded from the beginning that they had the right to charge for the license. At no place is it alleged or contended that the commissioners have exercised their judgment and discretion and desire to grant a revocable license. In this state of the negotiations or proceedings, no definite or specific issue is presented at this time since many of the important facts have not yet developed to the point which presents an actual controversy which we can decide. *Tanner v. McKeldin, supra; Staley v. Safe Dep. & Tr. Co., supra; Brown v. Trustees of M. E. Church,* 181 Md. 80, 87, 28 A. 2d 582.

### III

In prayer number (3), the Court was requested to declare the right *vel non* of the county to exact payment from Patuxent for the county's permission to use the wharf by installing Patuxent's pipes thereon, and, if such a right be found to exist, the reasonable limits of said charge. While we have referred to this briefly above, it again will be noted that throughout the recent negotiations and in the previous dealings of the parties, there was no denial of the county's right to charge for its permission to use the wharf as above mentioned; in fact, Patuxent paid for the same previously and in their last proposal offered to pay $50.00 per month. Without further discussion of the same, it is apparent this prayer does not now present a justiciable controversy. What has been said above is, likewise, applicable to the prayer for general relief (4).

Patuxent makes the further contention that, under the circumstances (granting to it a permit to repair its pipe line from the storage tanks to the wharf at substantial expense), the county is estopped to refuse permission to use the wharf by extending the pipes thereon. This position is untenable. The county was, and is, charged with the duty to maintain (so long as in the commissioners' judgment it is needed for public use) the wharf for the use, benefit and accommodation of the public. They have no right to give up or bargain away their legislative judgment and discretion as to how best to continue

552

and maintain the wharf for the legitimate purposes of the public, and, as the rights of the public are permanent, their actions do not estop them from exercising this judgment and discretion, although, in some instances, their conduct in matters of this nature may render the county liable in damages. *Lake Roland Elect. R. R. Co. v. Balto.,* 77 Md. 352, 379, 380, 381, 26 A. 510. This last statement is subject to what we said earlier in this opinion with reference to a revocable license. The power to grant a revocable license in no manner diminishes the right of the commissioners, or their successors in office, to exercise, continuously, their judgment and discretion in controlling and regulating the wharf for the public use, safety and convenience.

Finding no error in ruling of the Chancellor, the decree will be affirmed.

*Decree affirmed, with costs.*