# HAMILTON *v.* McAULIFFE

[No. 147, September Term, 1975.]

*Decided March 22, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Gary Howard Simpson* for appellant.

Submitted on brief by *Francis B. Burch, Attorney General,* and *Glenn W. Bell, Assistant Attorney General,* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Hubert Hamilton, a 35-year-old Jehovah's Witness, was shot through the chest on the evening of December 12, 1973, and was hospitalized under the care of two physicians who determined that he could not survive without immediate surgery and a blood transfusion. Hamilton consented to the surgery but refused to authorize a blood transfusion even though he was informed by his physicians that he would die if surgery was undertaken and a blood transfusion was not given in the course of the surgery. Hamilton's refusal to consent to the blood transfusion was based on two grounds: (1) that his religious tenets would not permit him to receive a blood transfusion under any circumstances and (2) that a blood transfusion would violate his constitutional right of privacy.

Hamilton's wife and two brothers filed a petition in the Circuit Court for Montgomery County seeking authority for the physicians to proceed with the transfusion notwithstanding Hamilton's refusal to consent. The court appointed counsel to represent Hamilton and an emergency hearing was held in the hospital on December 12 at which Judge John F. McAuliffe presided. After ascertaining that Hamilton fully understood the ramifications of his decision not to consent to the blood transfusion, that he was separated from his wife, and that he had a two-year-old child for whom he was the sole support, Judge McAuliffe authorized the transfusion; he concluded that "since death would likely follow unless a transfusion was authorized, I should authorize the hospital and physician to proceed with transfusions as if the patient had given consent, and that the substantial interest of the state warranted the exercise of equitable jurisdiction."

After the transfusion was given to Hamilton, he filed a timely appeal of Judge McAuliffe's order to the Court of Special Appeals. That court, by order dated January 18,

1974, dismissed the appeal "as moot and to the extent it is not moot, it is interlocutory." Hamilton did not seek review of that judgment in this Court, nor did he initiate any further proceedings before Judge McAuliffe with reference to the order of December 12, 1973.

On November 13, 1974, 11 months after the blood transfusion was given to Hamilton, he filed a declaratory judgment action in the Circuit Court for Montgomery County, alleging violation by Judge McAuliffe of his state and federal constitutional rights. Hamilton asserted that Judge McAuliffe infringed his First, Ninth, and Fourteenth Amendment rights which were protected from state interference by 42 U.S.C. § 1983,[1] and that he had also violated his constitutional right to religious freedom under Articles 36 and 45 of the Maryland Declaration of Rights. He prayed that a declaratory judgment be entered against Judge McAuliffe, declaring that his order of December 12, 1973 authorizing the blood transfusion was "erroneous"; he also sought an order preventing Judge McAuliffe "from presently and in the future ordering a blood transfusion for Mr. Hamilton." No money damages were claimed.

A demurrer was filed on behalf of Judge McAuliffe asserting that the case presented only moot questions of law and that consequently no justiciable controversy existed. The court (Bowen, J.) sustained the demurrer without leave to amend. It concluded that the declaration failed "to state a justiciable issue ripe for determination under the declaratory judgment process"; that it was improper to invoke the declaratory judgment process in the absence of "a real and present question which involves substantial future interest which is susceptible of being decided presently so that future conduct may be ordered in accordance with the

---

1. 42 U.S.C. § 1983 provides that

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

present decision"; and that it was not the function of the Declaratory Judgments Act to permit a collateral attack on an action already taken. Hamilton appealed to the Court of Special Appeals. We granted certiorari pursuant to Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-203.

The question on appeal, as Hamilton sees it, is "whether a declaration complaining of a violation of his civil rights by a judge who ordered that he undergo an involuntary blood transfusion involves a continuing 'case in controversy' after the subject order has been passed, the blood transfusion given and where the patient survived and has no present need for further transfusions." Relying principally upon Supreme Court cases, Hamilton claims that the case presents a justiciable controversy because Judge McAuliffe violated his civil rights and thereby caused him to suffer an actual injury which, in view of Judge McAuliffe's judicial immunity, could not be redressed except by a declaration of his rights.

The Maryland Uniform Declaratory Judgments Act, Code, Courts Article, § 3-409 (a) provides, with exceptions not here pertinent, that:

". . . a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."

That the existence of a justiciable controversy is a prerequisite to the maintenance of a declaratory judgment

in Maryland is well settled. *Prince George's Co. v. Bd. of Trustees*, 269 Md. 9, 304 A. 2d 228 (1973). A controversy is justiciable " 'when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded.' " *Patuxent Co. v. Commissioners*, 212 Md. 543, 548, 129 A. 2d 847 (1957). It is thus clear that the declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise, *Prince George's Co. v. Chillum-Adelphi*, 275 Md. 374, 340 A. 2d 265 (1975); *Liss v. Goodman*, 224 Md. 173, 167 A. 2d 123 (1961), or questions which have become moot, *Eberts v. Congress'l Country Club*, 197 Md. 461, 79 A. 2d 518 (1951), or merely abstract questions, *Davis v. State*, 183 Md. 385, 37 A. 2d 880 (1944). That the declaratory judgment process should not be used where a declaration would not serve a useful purpose or terminate a controversy is equally well settled. *Liss v. Goodman, supra; Bachman v. Lembach*, 192 Md. 35, 63 A. 2d 641 (1949); *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 56 A. 2d 144 (1947).

In sum, a declaratory decree should not be given unless

> "there is either an actual existing controversy, or antagonistic claims which indicate inevitable litigation, or when a party asserts a legal status or right and there is a denial by an adversary party, and the court is satisfied that such a decree will serve to terminate the controversy." *Eberts v. Congress'l Country Club, supra*, 197 Md. at 465.

As the Supreme Court observed in *Golden v. Zwickler*, 394 U. S. 103, 108, 89 S. Ct. 956, 22 L.Ed.2d 113 (1969), declaratory relief requires factual allegations which, under all the circumstances, show that

> " '. . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' "[2]

---

2. Section 3-414 of the Maryland Uniform Declaratory Judgments Act provides that the Act be construed in harmony with federal law.

In view of these established principles, we agree with the lower court that a justiciable controversy does not exist in this case. Since the lack of justiciability is so plainly evident from the record, we think the demurrer was properly sustained without leave to amend. *See Woodland Beach Ass'n v. Worley*, 253 Md. 442, 252 A. 2d 827 (1969).

The actual controversy in this case was engendered by Judge McAuliffe's order of December 12, 1973, which authorized, in light of then existing circumstances, the blood transfusion for Hamilton over his constitutionally grounded protest. Once the transfusion was given and Hamilton's appeal of Judge McAuliffe's order was dismissed by the Court of Special Appeals, and no further proceedings were pursued in that case, the underlying controversy expired and was no longer justiciable.[3] *See Eberts v. Congress'l Country Club, supra.* In his declaratory judgment action, Hamilton does not claim that the alleged violation of his constitutional rights continues to the present time; nor is there any indication that he will be subjected to further transfusions in the future. There is, therefore, no present controversy, no present claim of right involving antagonistic parties and adversary positions indicating imminent or inevitable litigation, nor is there any challenged or denied legal status, the uncertainty of which a declaratory decree would terminate. Whether an individual has the right to refuse a blood transfusion necessarily turns upon facts existing at the moment. *See* Anno., 9 A.L.R.3d 1391 (1966). The declaratory judgment process is therefore ill fitted as a vehicle to declare the rights of parties in future circumstances as yet unknown. The cases relied upon by Hamilton to demonstrate the existence of a justiciable controversy are plainly distinguishable on their facts.[4]

---

**3.** We note that, in a proper case, mootness need not prevent appellate review of the merits. *See* Roe v. Wade, 410 U. S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973); State v. Ficker, 266 Md. 500, 295 A. 2d 231 (1972); Lloyd v. Supervisors of Elections, 206 Md. 36, 111 A. 2d 379 (1954); John F. Kennedy Memorial Hospital v. Heston, 58 N. J. 576, 279 A. 2d 670 (1971).

**4.** Super Tire Engineering Co. v. McCorkle, 416 U. S. 115, 94 S. Ct. 1694,

Moreover, as we noted with regard to declaratory judgment actions in *Fertitta v. Brown,* 252 Md. 594, 251 A. 2d 212 (1969):

"Once a controversy has been finally adjudicated by a court with jurisdiction of the subject matter and the parties, the controversy is no longer alive and therefore is not the proper subject for a declaratory judgment action; and it is generally held that judgments and decrees speak for themselves and declaratory proceedings are not available either to construe, clarify or modify them. Declaratory proceedings were not intended to and should not serve as a substitute for appellate review or as a belated appeal. [Citations omitted.]" 252 Md. at 599-600.

*See also* 2 Anderson, *Actions for Declaratory Judgments,* § 494 (2d ed. 1951). To render a declaratory judgment in the circumstances of this case would, we think, be inconsistent with the purpose of the declaratory judgment remedy and contravene established Maryland procedure. See Code, Courts Article, §§ 1-501, 12-308; *cf. Kardy v. Shook,* 237 Md. 524, 207 A. 2d 83 (1965).

*Order affirmed; costs to be paid by appellant.*

---

40 L.Ed.2d 1 (1974); Powell v. McCormack, 395 U. S. 486, 89 S. Ct. 1944, 23 L.Ed.2d 491 (1969), and Evers v. Dwyer, 358 U. S. 202, 79 S. Ct. 178, 3 L.Ed.2d 222 (1958), retained their justiciability by reason of either a claim for salary (*Powell*) or the continued presence of statutes in which the parties retained a sufficient interest (*Super Tire, Evers*). There are no such vital signs in the present case.