557 A.2d 626

**HICKORY POINT PARTNERSHIP**

v.

**ANNE ARUNDEL COUNTY, Maryland et al.**

No. 72, Sept. Term, 1988.

Court of Appeals of Maryland.

May 10, 1989.

Royal G. Shannonhouse, Annapolis (David A. Simison, Arnold, on brief), for appellant.

Robert S. Brennen (Thomas E. Lynch, III, Miles & Stockbridge, all on brief), Baltimore, William E. Kirk (Townshend & Kirk, P.A., Emile Henault, all on brief), Annapolis (Daniel C. Conkling, on brief), Glen Burnie, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

Appellant, Hickory Point Partnership (the Partnership), owns, and contemplates completing, a relatively large residential subdivision. Development of the subdivision stalled some years ago after "final" plats had been recorded, restrictive covenants had been imposed, open space had been placed in trust and some lots had been conveyed to homeowners by reference to the plats. Presently to carry the project forward the Partnership must obtain plat approvals under current subdivision regulations. Before undertaking to do so, however, the Partnership brought the instant declaratory judgment action to get a determination whether homeowners can prevent implementation of a development concept by successfully contending that it violates rights acquired under the earlier common scheme of development. In the circuit court and in its brief as appellant, the Partnership contended that subdivision regulations caused the homeowners to lose any rights based on a common scheme of development when those regulations operated, because of inaction on the part of the Partnership, to extinguish the previously obtained plat approvals. We shall hold that there is no merit in that contention. In its reply brief, filed by new counsel who also argued orally, the Partnership further submitted that the trial court erred by failing to specify the homeowners' rights. That purported issue, however, is not ripe for decision.

In northern Anne Arundel County, at the eastern end of the peninsula formed by the Magothy and Patapsco Rivers, and lying north of Bodkin Creek and south of Boyd Pond, is the 67.33 acre site known as Hickory Point. In 1975 Morris M. Shuvalsky and Esther D. Shuvalsky (the Shuvalskys) owned and undertook the first development of the site. At that time the Anne Arundel County subdivision regulations were those enacted by 1969 Laws of Anne Arundel County,

Council Bill No. 76–69, § 2. The relevant part was codified as § 13–113.4 of the Anne Arundel County Code (1967, Supp.1969) and provided:[1]

"[Final Plat]—Subdivision Agreement

"Prior to final plat approval, the subdivider shall file a subdivision agreement covering his financial obligations for all public construction and other improvements attendant to his subdivision, if not guaranteed by a public works agreement under section 13–122. If a public works agreement has not been entered into and construction has not begun within two (2) years of the final plat approval, subdivision approval will be null and void. The subdivider will then be required to conform with the subdivision regulations in effect at that time. Should there be no subdivision regulation changes during this two (2) year period, the plat would only be subject to final plat review. For the final subdivision plat approval to remain in effect, the subdivider must be in operation under a public works agreement and be in continuous operation without interruption for not more than one (1) year at any given period of time. An appropriate notice to title examiners shall be placed on the plat as follows in the event a public works agreement is not entered into prior to final approval. A subdivision agreement permits the recording of the plat but no construction or sale of property as noted below."

In March 1975 the Shuvalskys recorded a Declaration of Restrictions "for the purpose of creating and maintaining a general scheme of development," intending that the tract "be subject to the covenants, conditions, restrictions and reservations" set forth therein and reciting that the tract would "be subdivided into lots with streets and roads laid out, as will be shown on a Plat thereof." The Shuvalskys further reserved to themselves and their assigns "[t]he right to waive such portion of the protective covenants ...

---

**1.** The relevant part is now codified, as amended, at Anne Arundel County Code (1985), Art. 26, § 2–405(d), (e).

as they deem necessary or desirable in the best interest of the development." The developers further declared that "[a]ll lot owners of the sub-division shall be entitled to [the] use in common with others of all communal open space and recreational areas[.]" The covenants expressly were to run with the land.

Final plat approval for Hickory Point, Section One was obtained in October 1975. Section One was presented on a vicinity plat and three detailed recorded plats, plat one (No. 3183), plat two (No. 3184) and plat three (No. 3185). In lieu of a public works agreement at that time, the Shuvalskys bound themselves to Anne Arundel County, Maryland (the County) in the sum of $245,890 to guarantee completion of Section One, on or before September 5, 1977, "in the construction of all the streets, sidewalks, roads, curbs and all other improvements therein called for by the plans thereof[.]"

Contemporaneously with the recording of the plats, the Shuvalskys recorded a Declaration of Covenants, Restrictions, and Affirmative Obligations applicable to Hickory Point, Section One. That declaration contemplated formation of a civic association for the Hickory Point community which would take title to and maintain the open spaces and recreation areas in Section One. The covenants and restrictions of that declaration expressly were to run with the land. Ninety percent of the lot owners had power to amend the declaration and the Shuvalskys, for themselves and their assigns, reserved "the right in [their] absolute discretion to annul, waive, change, or modify any of the restrictions, conditions or covenants contained" in the declaration.

In order to simplify the factual presentation, we shall limit our description of the platted areas at Hickory Point to plats one and two.[2] The area presented on plat one lies

2. Other areas in Hickory Point were the subject of recorded final plats after 1975 and one area benefited from a completed public works agreement. Lots in other areas were also sold to homeowners.

south of Boyd Pond and north of Bayside Beach Road which curves to run in a northerly direction and also to form the eastern boundary of the plat one area. The plan called for a street extending northwesterly from the portion of Bayside Beach Road on the eastern boundary of the site and ending in a cul-de-sac. The building lots were laid out in a cluster development on both sides of the proposed street. Between the rear lines of the individual lots and the perimeter of plat one were 8.148 acres of open space, much of which abutted Boyd Pond.

Plat two depicts an area lying south of Bayside Beach Road. The most northerly part of plat two is laid out in four lots (lots one, two, three and four of Block E) which abut a platted widening strip which, in turn, abuts the south side of Bayside Beach Road as then existing. Abutting those four lots to the south are 1.304 acres designated as a "recreation area." The balance of 4.931 acres on plat two is marked "open space area."

Prior to approval of plat two the Shuvalskys had conveyed the 1.304 acres of recreational area to the County's Planning and Zoning Officer "in [t]rust, to be conveyed to a citizens association in the area of 'Hickory Point, Section 1' community." Contemporaneously with the recording of the plats for Section One the Shuvalskys deeded all those parcels designated as communal open space on the plats of Section One to the County "in trust, to be conveyed to the Homeowners Association in the area of 'Hickory Point' community[.]"

Plats one and two contain legends advising, *inter alia*, that the recreation area is dedicated to the recreation use of the residents of the subdivision; that the land designated as open space and recreation area is for use in common for the residents of the subdivision; that subdivision of the open space land is not permitted and its use is limited to parks, conservation, recreation, gardening and similar purposes or,

---

Nevertheless the issues raised by the Partnership can be adequately presented in terms of the facts bearing on plats one and two.

with county health department approval, also as a secondary septic tank location; that ownership and maintenance of the open space land shall be in common and the responsibility of the homeowners association to be established; and that no sales shall be made or building permits issued until the necessary improvements have been guaranteed by a public works agreement.

Based on preliminary plat approval, the Shuvalskys had obtained building permits to construct model homes on lots two, three and four of Block E of plat two. In January 1976 the Shuvalskys conveyed those three lots to Triad Builders, Inc. (Triad). At some point homes were constructed on the lots. In the summer and fall of 1976 Triad conveyed the improved lots to homeowners, at least two of whom obtained purchase money mortgage loans from institutional lenders.[3] Those homeowners and their mortgagees are among the appellees in this case.

In November 1976 the Shuvalskys conveyed all of their remaining interest in Hickory Point to the Partnership.

More than two years after final approval of plats one and two, the Partnership, in April 1978, entered into a public works agreement, No. 27–8, and guaranteed the perform-

---

3. By a letter of January 1978 the Planning and Zoning Officer expressed the view that the three dwellings were sold in violation of subdivision regulations. In this connection, the Court of Special Appeals has held that an executory contract for the sale of a platted lot in violation of a Howard County subdivision regulation was not void per se as against public policy. *Montagna v. Marston,* 24 Md. App. 354, 330 A.2d 502 (1975). The majority rule is that the failure of a subdivider to comply with subdivision regulations requiring the approval or recordation of plats prior to a conveyance does not render the conveyance void. *See Cox v. Mountain Vistas, Inc.,* 102 Idaho 714, 639 P.2d 12 (1981); *Marriott Fin. Serv. v. Capitol Funds,* 288 N.C. 122, 217 S.E.2d 551 (1975); *Sienkiewicz v. Smith,* 97 Wash.2d 711, 649 P.2d 112 (1982) (en banc); and *see generally* Annotation, *Failure of Vendor to Comply With Statute or Ordinance Requiring Approval or Recording of Plat Prior to Conveyance of Property as Rendering Sale Void or Voidable,* 77 A.L.R.3d 1058 (1977).

We, however, need not address this issue as no party to this appeal contends that the apparent violation prevented the purchasing homeowners from acquiring good title.

ance, before May 15, 1980, of the public improvements reflected on those plats by posting an irrevocable letter of credit in the amount of $210,000. No work was done under public works agreement 27–8, apparently because of rising interest rates.

By a recorded agreement of November 1983 the County released the Partnership from its obligations to the County under public works agreement 27–8. The parties further agreed that the County would continue to hold in trust all recreation areas and open space designated on plat two "for the use and benefit of the owners of Lots 2, 3 and 4 [in Block E on plat two] and for such other surrounding lot owners who may have already acquired any rights thereon[.]" That provision's recited purpose was "to provide adequate recreation and open space for the aforementioned lots, yet allow the Partnership at some future date to use any area in excess of statutory requirements toward [its] subdivision requirements" in the event the area of plats one and two was subsequently resubdivided. The Partnership also agreed to indemnify the County with respect to liability arising out of the agreement or the County's actions thereunder.

The Partnership then caused an engineering drawing to be prepared and spread upon the land records which was intended to reflect the Partnership's position concerning the existing subdivision status of Hickory Point. The recorded drawing did not purport to be a final plat of resubdivision approved by the Office of Planning and Zoning.[4] The Partnership also spread upon the land records a letter from an Assistant County Solicitor advising that all land covered by plats one and two, except that previously conveyed, had reverted to raw, unsubdivided status because the abrogation of public works agreement 27–8 "effectively nullified" those plats. One of the principal differences between the

---

4. By the term "resubdivision," we mean a revised final plat which deviates from earlier approved plats, and not the "resubdivision" process of Anne Arundel County Code (1985), Art. 26, § 4–404.

engineering drawing and the plats approved in 1975 was the elimination of the 8.148 acres of open space shown on plat one. That open space was the ingress and egress to Boyd Pond by plat two lot owners on the south side of Bayside Beach Road.

Apparently sensing a lack of enthusiasm among Hickory Point lot owners for the concept embodied in the engineering drawing, the Partnership filed the instant declaratory judgment action naming as defendants all known, interested persons and seeking to bind all unknown, interested persons. The Partnership sought a declaration confirming boundary lines and titles as reflected on the engineering drawing and adjudicating certain previously recorded, approved subdivision plats, including plats one and two, to be "null and void." Because the engineering drawing contained "errors," *i.e.,* it did not accurately reflect the concept intended by the Partnership, an amended complaint for declaratory judgment was filed.

The amended complaint recited that the Partnership "has decided not to develop Hickory Point as originally contemplated on Plats [one, two and others] and seeks to clarify its rights under the law to own, use and possess the property shown on those plats free and clear of any right, title, claim or interest of the Defendants." Included in the relief sought by the Partnership was a declaration that, in effect, all of the land shown on plat one was "unsubdivided open acreage" owned by the Partnership and "unencumbered by any claim of the Defendants." The identical declaration was sought as to the following land on plat two:

"(1) Lot 1, Block E,

(2) The roadbed for Point Lookout Court, and

(3) A widening strip and roadbed for relocated Bayside Beach Rd., except that portion of the widening strip lying between existing Bayside Beach Road and Lots 2, 3, and 4, Block E

Items (2) and (3) were required to be deeded to the County as a condition to the approval of the contemplated development of Plat [two]."

Furthermore, the Partnership stated in its amended complaint that it did *not* seek to treat as unsubdivided open acreage "[t]he recreation area, open space and Lots 2, 3, and 4 on Plat [two]."

The circuit court entered a declaratory judgment adjudicating that

"1. The rights acquired by the property owners of Hickory Point Subdivision to the open space, recreational areas, roadways, road beds, and other improvements, designs, and plans on Plats [one, two and others] by virtue of their purchase of real property after the filing of those Plats precludes this Court from declaring the Plats null and void;

"2. The property owners have the right to prohibit the development of the property referenced in Plats [one, two and others] in any way inconsistent with their rights under the Plats; and

"3. Plats [one, two and others] remain in full force and effect and are not null and void with respect to the individual property owners of Hickory Point Subdivision."

The Partnership appealed and we issued the writ of certiorari prior to consideration of the appeal by the Court of Special Appeals.

■ The legal position of those lot owner defendants who participated in the circuit court and before this Court is that grantees of lots in Hickory Point acquired "rights" because of recorded plats, the imposition of restrictive covenants and the deeds to the County, in trust. They cite, for example, *Boucher v. Boyer,* 301 Md. 679, 484 A.2d 630 (1984) and *Whittington v. Mann,* 211 Md. 199, 126 A.2d 617 (1956) where particular parcels were held to have rights of way over specific courses by reference to subdivision plats. We have also enforced specific restrictive covenants against conduct violative, or imminently violative, of the covenants'

restrictions. *See Turner v. Brocato,* 206 Md. 336, 111 A.2d 855 (1955); *Steuart Transp. Co. v. Ashe,* 269 Md. 74, 304 A.2d 788 (1973). Rights of those types, whether considered to be rights in real estate, contract rights, or some combination of both, whether considered to be corporeal, incorporeal or some combination of both, and whether legally or equitably enforceable, or both, we shall refer to simply as "Property Rights."

The Partnership's case in the circuit court proceeded on the theory that § 13–113.4, by operation of law, abrogated any and all Property Rights which a lot purchaser may have acquired in any part of Hickory Point outside that purchaser's lot if the Property Rights were in whole or in part dependent upon reference to a previously recorded subdivision plat. This result was said to be produced by the language: "If a public works agreement has not been entered into and construction has not begun within two (2) years of the final plat approval, subdivision approval will be null and void." [5]

Here, as to plats one and two, the developer neither entered into a public works agreement nor began construction within two years of final plat approval. Under those circumstances "subdivision approval" became null and void. Section 13–113.4 stated the consequence to be that "[t]he subdivider will then be required to conform with the subdivision regulations in effect at that time." The terms of the ordinance indicate no design directly to extinguish Property Rights of lot purchasers which might have arisen after final subdivision approval and prior to the expiration of the two

_____

5. Although there are homeowners in Hickory Point, there is no formal homeowners' association. The homeowners have not demanded a conveyance from the County of the property held by it in trust. The Partnership does not directly come to grips with the effect of the trust deeds but its position in the circuit court seems to have been that it could redesign the layout of plat one unrestricted by the conveyance of the open space reflected thereon. The County's position on this point in the circuit court was that it did not know what it was going to do with that property and that the County would leave the problem's resolution in the circuit court's hands.

years. To construe § 13–113.4 as the Partnership initially sought would be contrary to the purpose underlying subdivision regulation which is to protect both the community as a whole and individual purchasers in the subdivision. *See Board of County Comm'rs v. Gaster*, 285 Md. 233, 246–47, 401 A.2d 666, 673 (1979) (quoting from 4 A. Rathkopf, *The Law of Zoning and Planning* ch. 71, § 2, at 71–6 to –7 (4th ed. 1979)); E. Yokley, *Yokley's Law of Subdivisions* ch. 1, § 2, at 2 (2d ed. 1981). Thus, the circuit court was correct in entering a declaratory judgment adverse to the Partnership insofar as the declaratory judgment rejected the extreme position advanced by the Partnership in the circuit court.

 Beyond that limited declaration, however, this action does not present issues which are ripe for adjudication. In order for issues of claimed deprivation of Property Rights to arise, there must first be one or more features of a new plan of subdivision, approved or imminently to be approved under the current regulations, which differ from one or more features of a nullified subdivision plat, of the restrictive covenants or of the trust deeds. That kind of deviation could arise because it is required by current regulations or because current regulations give the Partnership an option and the Partnership opts for the deviation. Here, there has been no resubmission to the County's subdivision process much less any approval of a new plan of subdivision so that there is no conflict with claimed Property Rights of Hickory Point lot owners at the present time. Thus, the issues presented for adjudication are not ripe.

A controversy is ripe when " 'there are interested parties asserting adverse claims *upon a state of facts which must have accrued* wherein a legal decision is sought or demanded.' " *See Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 690, 526 A.2d 598, 601 (1987) (quoting *Patuxent Oil Co. v. County Comm'rs*, 212 Md. 543, 548, 129 A.2d 847, 849 (1957), in turn quoting from 1 W.H. Anderson, *Actions for Declaratory Judgments* § 17 (2d ed. 1951)) and cases cited therein. "[T]he declaratory judgment

process is not available to decide purely theoretical questions or questions that may never arise, ... or questions which have become moot, ... or merely abstract questions...." *Hamilton v. McAuliffe,* 277 Md. 336, 340, 353 A.2d 634, 637 (1976) (citations omitted). Nor should it be employed "where a declaration would not serve a useful purpose or terminate a controversy...." *Id.* To address issues which are non-justiciable because they are not ripe "would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." *Hatt v. Anderson,* 297 Md. 42, 46, 464 A.2d 1076, 1078 (1983).

"Generally, an action for declaratory relief lacks ripeness if it involves a request that the court ' "declare the rights of parties upon a state of facts which has not yet arisen, [or] upon a matter which is future, contingent and uncertain." ' " *Boyds Civic Ass'n,* 309 Md. at 690, 526 A.2d at 602 (quoting *Brown v. Trustees of M.E. Church,* 181 Md. 80, 87, 28 A.2d 582, 586 (1942), in turn quoting from *Wahl v. Brewer,* 80 Md. 237, 243, 30 A. 654, 655 (1894)). *See, e.g., Hatt,* 297 Md. at 47, 464 A.2d at 1079 (a declaration of invalidity as to a county regulation which prohibited firefighters from criticizing their superior officers was dismissed on lack of ripeness grounds because "there [was] no indication that [plaintiff had] been ordered to do, or not do, anything under the regulation"); *Hamilton,* 277 Md. 336, 353 A.2d 634 (order directing Jehovah's Witness to submit to an emergency blood transfusion could not be challenged eleven months later when the record contained no indication that plaintiff would require future transfusions).

The purpose of the ripeness doctrine

"is to prevent premature judicial interference with government action and to avoid entanglement in abstract, poorly defined disputes. The mature, focused conflict not only affords the Court an informing perspective on the actual working or impact of laws, a view not available in the legislative process, but also provides the Court with

greater choice among the grounds for decision, an opportunity thus to decide in the narrowest compass."

Albert, *Justiciability and Theories of Judicial Review: A Remote Relationship*, 50 S.Cal.L.Rev. 1139, 1155 (1977). "The disagreement" over which declaratory relief is sought "must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291, 296 (1952).

Professor Borchard has described the ripeness concept in terms of a "series of labels":

"In general, it may be said that the facts on which a legal decision is demanded must have accrued, for the principle of a declaratory judgment is that it declares the existing law on an existing state of facts. The danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events ... and the prejudice to his position must be actual and genuine and not merely possible or remote. When the complaint on these tests is considered premature, the dismissal may be explained by any one of a series of labels, e.g., that there is as yet no 'controversy,' that the issue is hypothetical, that the result would be only an advisory opinion, etc."

E. Borchard, *Declaratory Judgments* 56 (2d ed. 1941).

The unsettled situation in the case at bar is somewhat analogous to *Patuxent Oil Co. v. County Comm'rs*, 212 Md. 543, 129 A.2d 847 (1957), where a plaintiff-oil company sought a declaration as to its rights and those of the County government with respect to the use of a pipeline under a public wharf in Anne Arundel County. The plaintiff was assignee of a revocable license granted by the County to erect and use a pipeline under a public wharf. The license was abandoned and terminated by plaintiff when it discontinued its pipeline use. Several years later, plaintiff sought to reactivate the pipeline and discovered it needed repairs. The County notified plaintiff not to replace or repair the old

pipeline until a new license agreement was reached between the parties. The record showed that plaintiff had yet formally to request a renewal of the license and that the parties had only entered into negotiations as to the terms of the agreement. The Court affirmed a decree sustaining a demurrer to the bill of complaint and stated:

"At no place is it alleged or contended that the commissioners have exercised their judgment and discretion and desire to grant a revocable license. In this state of the negotiations or proceedings, no definite or specific issue is presented at this time since many of the important facts have not yet developed to the point which presents an actual controversy which we can decide."

*Id.* at 551, 129 A.2d at 851.

The instant case may be distinguished from *Boyds Civic Ass'n,* 309 Md. 683, 526 A.2d 598, where we considered whether master plan amendment procedures complied with State and Montgomery County law. The plan amendment recommended certain property in a residential zone as suitable for commercial use as a Mineral Resource Recovery Zone. A prerequisite to that zoning is that the master plan recommend that use for the property in question. The County argued that the action lacked ripeness since the challenged amendment to the master plan merely authorized the zoning authority to grant an application for Mineral Resource Recovery Zoning but did not require the zoning authority to do so. In holding that the action was justiciable, we said:

"Here ... the challenged plan amendment was initiated, approved, and adopted in furtherance of an actual, pending application to amend the local zoning map. Moreover, the designation of an area on the applicable master plan as suitable for a Mineral Resource Recovery Zone was a condition precedent to the granting of an application for zoning of an area as a Mineral Resource Recovery Zone.... The prospect of a controversy, therefore, lay well beyond the realm of matters 'future, contingent and uncertain'."

*Id.* at 697, 526 A.2d at 605. Here, unlike the *Boyds Civic Ass'n* scenario, the Partnership has yet to obtain any subdivision reapproval.

Further, it is possible that an approved plan of resubdivision for Hickory Point will conflict with a claimed Property Right of one or more appellees simply because the deviation is required by changes in regulations which have come about after the earlier approval. The Planning and Zoning official who administers the subdivision review process testified:

> "The developer would have to submit new subdivision plans starting from scratch for those areas that are not platted. He would have to conform with current zoning as well as the Chesapeake Bay Critical Area criteria as set forth by Bill 90–86. Also since the subdivision was approved, the County has enacted stormwater management laws and regulations relative to the release of stormwater into chartered waters and also an adequate facilities ordinance has been passed and submitted. The developer would have to address adequate facilities issues before final subdivision could be approved."

These new regulations appear to be exercises of the power delegated by the State to the County to legislate for the common good, including the protection of public health and of the environment. The lot owners of Hickory Point are not shielded from exercises of regulatory power solely because their prior relationship with the Partnership and its predecessor in title may have given rise to Property Rights in the lot owners. *Cf. Dawe v. City of Scottsdale,* 119 Ariz. 486, 581 P.2d 1136 (1978) (en banc) (recording of subdivision plat did not give landowners a vested right to develop unimproved property in accordance with plat and contrary to subsequently enacted subdivision ordinance); *Sherman–Colonial Realty Corp. v. Goldsmith,* 155 Conn. 175, 183, 230 A.2d 568, 572 (1967) ("The mere filing of maps for the subdivision of a parcel of real estate does not necessarily immunize the subject property from the operative effect of subsequent subdivision regulations."); *Weber v. Village of*

*Skokie,* 92 Ill.App.2d 355, 235 N.E.2d 406 (1968) (platting statute did not vest rights in property owners so as to permit use of property in accordance with recorded plats contrary to certain minimum area requirements of a subsequently enacted zoning ordinance); *Blevens v. Manchester,* 103 N.H. 284, 170 A.2d 121 (1961) (the fact that a subdivider has recorded plats approved under a prior statute does not give rise to vested rights exempting the subdivider from the operation of subsequently enacted subdivision ordinance); *State ex rel. Mar–Well, Inc. v. Dodge,* 113 Ohio App. 118, 122, 177 N.E.2d 515, 519 (1960) ("The mere fact that an allotment plat is approved and recorded does not irrevocably fix the rights of the parties. Valid changes may thereafter be made in the zoning regulations, and the allotter must conform thereto."); *In re McCormick Management Co.,* 547 A.2d 1319 (Vt.1988) (filing plats before adoption of zoning ordinance created no vested rights to develop in accordance with filed plats and contrary to zoning ordinance). But any conflict between new regulations and claimed Property Rights cannot be resolved in the abstract.

The Partnership's reply brief essentially recognizes the lack of ripeness. It also submits that the circuit court erred by entering a decree which was incomplete and ambiguous, defects which we are urged to cure by remand and not by modification. The Partnership

> "respectfully submits that it would be inappropriate for the [Court of Appeals] to [modify the judgment] in the case *sub judice* because the record is voluminous and the further declaratory relief prayed is dependent upon a complex and variable interplay of local zoning law, existing land use, alternative development possibilities and potentially conflicting rights and wishes of lot and home owners in the subdivision."

Appellant's Reply Brief at 20–21. For the reasons stated above, a remand would not make this case ripe for adjudication.

We interpret the argument to mean that the Partnership desires the opportunity to flesh out the record on remand

by presenting more clearly to the circuit court the precise points of conflict between whatever plan of development the Partnership is then proposing and any claimed Property Rights of the appellees. That approach, however, perpetuates another defect in this action, that of putting the judicial cart before the administrative horse. On a remand for retrial there would still be no approved resubdivision before the circuit court. Counsel for the Partnership frankly acknowledged at oral argument that the Partnership does not desire to expend time and effort in the subdivision process if lot owners in Hickory Point can prevent an approved product of the subdivision process from being implemented. The circuit court, however, cannot exercise the administrator's discretion and cannot review subdivision submissions in the first instance. The strategy which the Partnership would like to pursue violates the principle requiring administrative remedies to be exhausted. *See* Md. Code (1974, 1984 Repl.Vol.), § 3–409(b) of the Courts and Judicial Proceedings Article; *see generally Secretary, Maryland Dep't of Human Resources v. Wilson*, 286 Md. 639, 644, 409 A.2d 713, 717 (1979) ("This Court has consistently held that because, under the Declaratory Judgment Act, statutory administrative remedies are exclusive, the administrative procedures established must be exhausted before a litigant may seek declaratory relief from a trial court."); *Prince George's County v. Blumberg*, 288 Md. 275, 292, 418 A.2d 1155, 1165 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981) ("An administrative remedy 'is not "inadequate" so as to authorize judicial intervention before exhaustion of the remedy merely because it is attended with delay, expense, annoyance, or even some hardship.' "). The Partnership's criticism of the declaratory judgment actually entered will not be cured by a remand for further proceedings.

We do, however, agree with the Partnership that the declaratory judgment is at least ambiguous, and perhaps overly broad. The absence of justiciable issues presented· by the Partnership reflects itself in the judgment's generali-

ty. The circuit court should have limited the judgment to one declaring the converse of the legal conclusion sought by the Partnership. Pursuant to Maryland Rule 8–604(a)(4) we modify the declaratory judgment to read:

"The failure of Hickory Point Partnership, of its predecessors in title, or of both of those interests, to execute one or more public works agreements applicable to any part of Hickory Point or to begin and continue the construction of improvements as required by one or more public works agreements applicable to any part of Hickory Point did not have the legal effect, solely by the operation of Anne Arundel County Code (1967, Supp. 1969), § 13–113.4, of nullifying rights, if any, acquired by grantees of lots in Hickory Point, their heirs, personal representatives, successors and assigns, which extend beyond the respective lot lines of those grantees and which are based in whole or in part upon one or more recorded, final subdivision plats of Hickory Point, or of any part thereof, including, by way of illustration and not by way of limitation, rights based upon a common scheme of development, upon any legends set forth on any one or more of the above-described plats, upon recorded restrictive covenants, or upon any deed to Anne Arundel County, Maryland, or to any of its officers or employees, in trust, for the benefit of lot owners, or of any incorporated or unincorporated association of lot owners, in Hickory Point."

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY MODIFIED, AND AS MODIFIED, AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.