**OCEAN PETROLEUM, CO., INC.**

**v.**

**Dorothy YANEK, et al.**

**No. 109, Sept. Term 2009.**

Court of Appeals of Maryland.

Oct. 4, 2010.

Matthew T. Mills (Raymond S. Smethurst, Jr., Adkins, Potts & Smethurst, LLP, Salisbury), on brief, for Appellant.

John B. Robins, IV (John B. Robins, IV, P.A., Salisbury), on brief, for Appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BARBERA, J.

This appeal arises out of a declaratory judgment action filed in Circuit Court for Worcester County, in which Appellant, Ocean Petroleum Co., and Appellees, Dorothy Yanek and the Estate of Victor Yanek, sought to establish the meaning of "fair market value" as that term appears in an option to purchase provision of a lease agreement between these parties. For the foregoing reasons, we affirm the judgment of the Circuit Court.

## I.

Appellant owns and maintains a convenience store and other improvements, the "85th Street Wine Rack," on a piece of property located at 8501 Coastal Highway in Ocean City, Maryland. The property is owned by Appellees and leased from them by Appellant pursuant to a lease agreement assigned to Appellant on July 1, 1980. The term of the lease is ninety-nine years, commencing on April 1, 1976, the date the original tenant entered into the lease before assigning it to Appellant, and ending on March 31, 2075. Pursuant to the lease, Appellant is obligated to pay monthly rent as well as "additional rent," which includes "duties, taxes, assessments"

and other charges attendant to the ownership and maintenance of the property.

The lease further provides that, "[a]t any time after the expiration of twenty (20) years from the commencement date of th[e] Lease," Appellant "shall have the right and option to purchase the aforesaid demised premises" under certain terms and conditions:

1. The parties hereto shall attempt by negotiation to establish a price for the land hereinbefore described. In the event a purchase price cannot be agreed upon by the Landlords and Tenant within thirty (30) days of commencement of negotiations, then the purchase price shall be determined as follows:

(a) The purchase price for the land shall be the fair market value thereof at the time this option to purchase is exercised. Fair market value of the land shall only be established by Landlords and Tenant each appointing a real estate appraiser whose qualifications shall be at least a member of the American Society of Appraisers. In the event the two appraisers by Landlords and Tenant cannot agree upon the fair market value of the land only, then such two appraisers shall agree upon a third appraiser to determine the fair market value of the land only and his decision shall be binding upon the parties hereto.

2. This option shall be exercised by the giving of written notice to the Landlords of the intention of Tenant to exercise this option either in person or by registered mail and in no other way.... Settlement shall take place within six months of the date of the exercise of this option by Tenant.

3. Upon payment of the unpaid purchase money, a Deed for the property containing covenants of special warranty and further assurances shall be executed at Tenant's expense, which deed shall convey the property by a good and merchantable title to the Tenant free of liens and encumbrances.

In a letter to Mrs. Yanek dated November 5, 2007, Appellant exercised the option to purchase the property.

The parties were unable to agree to a purchase price for the land and, moreover, unable to agree on the meaning of the phrase "the fair market value of the land only" as it appears in the lease.[1] Consequently, Appellant filed in the Circuit Court for Worcester County a complaint seeking a declaratory judgment construing that phrase. Appellant argued that "fair market value of the land" should be interpreted to mean "[t]he fair market value of the land as encumbered by [Appellant's] 99–year lease." Appellees countered that "the purchase price is not limited to the value of the reversionary interest of the landlord in the premises" and therefore "fair market value of the land" should be interpreted to mean the value of the land as unencumbered "at the time [Appellant] exercised the option to purchase." Both parties agreed that, "[u]ntil the issue is resolved with respect to that which is to be appraised, it is impossible to implement the procedures in the Lease Agreement designed to establish the purchase price."

During the hearing on the complaint the court observed that, if Appellant took title to the property, Appellant's leasehold interest would merge with the fee interest in the estate, and Appellant would own the property no longer encumbered by the lease.[2] Upon concluding the hearing, the court further observed that, "where it is between the landlord and the tenant, even though there is no specific language as to merger, the term fee simple, or fee title ... expresses an intent to form the merge[r]." The court therefore decided that "fair market value of the land" under the lease agreement should be determined as if the land were unencumbered.

On February 18, 2009, the Circuit Court entered a written declaratory judgment stating the following:

1. Appellant and Appellees agree that "only" as it appears in the phrase "the fair market value of the land only" indicates that the purchase price excludes the value of the tenant's improvements to the property.

2. In the context of property law, "merger" is defined as "[t]he absorption of a lesser estate into a greater estate when both become the same person's property." Black's Law Dictionary 1009 (8th ed. 2004).

[T]he meaning of 'fair market value of the land only' as used in the Lease Agreement which grants [Appellant] a right to purchase the 'demised premises' . . . is clear and unambiguous" and "that the purchase price for the [Appellant's] exercise of its right to purchase the demised premises is to be the fair market value of the land as unencumbered by [Appellant's] lease at the time the option to purchase is exercised and not the value of [Appellees'] reversionary interest therein.

Appellant timely noted an appeal to the Court of Special Appeals. Before consideration by that court, however, this Court on its own initiative issued a writ of certiorari. *Ocean Petroleum v. Yanek,* 410 Md. 702, 980 A.2d 483 (2009). Although the parties frame differently the issues presented by this appeal,[3] we may effectively resolve all of these issues by addressing whether "fair market value of the land," as that term appears in the lease agreement between Appellant and Appellees, was intended to mean the fair market value of the land subject to an encumbrance or, instead, the fair market value of the land as an unencumbered fee simple estate. For the following reasons, we hold that "fair market value of the

---

**3.** Appellant presents the following question for review:

Did the circuit court, in a case of first impression in Maryland, misapply the doctrine of merger to the option-to-purchase provision in a long-term lease, when it ruled that Appellant's lease should not be considered in establishing the fair market value of Appellees' land where Appellant was the buyer, but would be considered if the buyer was anyone else?

Appellees cast the issues in terms of three questions:

1. To ascertain the intention of the parties to the contract, was it proper for the trial judge to take into consideration the fact that exercise of the purchase option by the tenant would ultimately result in a merger of the leasehold and the Landlord's reversionary interest, thereby extinguishing the leasehold?

2. Would it be reasonable to construe the reference in the Lease Agreement to 'fair market value of the land only' to mean either 'the fair market value of the Landlord's interest in the land' or 'the fair market value of the reversionary interest in the land'?

3. Would it be just to construe the purchase option in such manner as would permit the tenant to secure the unencumbered fee simple estate in the land for a price discounted as if the land was encumbered?

land," as that phrase appears in the lease agreement between Appellant and Appellees, refers to the fair market value of the land as an unencumbered fee simple estate.

## II.

■ Before addressing the parties' contentions and the merits thereof, we must dispose of a procedural matter. During oral argument the Court asked whether the parties present a controversy ripe for adjudication, notwithstanding that they have not yet appointed appraisers to determine the fair market value and have presented no evidence that appraisers have disagreed about the fair market value of the property. The parties argued at that time that they must ascertain the meaning of the phrase "fair market value of the land" before they can appoint appraisers to determine the fair market value of the property. The parties further asserted that, without a declaratory judgment establishing the meaning of that phrase, the parties are unable to instruct the appraisers about the extent of the property interest for which they should determine the fair market value. Moreover, the parties argued that the meaning of "fair market value of the land" is an issue of law that must be decided by the courts in accordance with the intent of the contracting parties, not by appraisers who are strangers to the contract and whose interpretation of the contract should not be binding.

■ Declaratory judgment actions are authorized under the Maryland Declaratory Judgment Act. Md. Code (2006 Repl. Vol.), §§ 3–401 to 3–415 of the Courts & Judicial Proceedings Article ("C.J."). Pursuant to that authorization, courts may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." C.J. § 3–403(a). Declaratory relief, however, is discretionary and may only be granted when "[a]n actual controversy exists between contending parties." C.J. § 3–409(a)(1). We have explained that, when a party alleges something less than an "actual controversy," that controversy is not ripe and therefore is not justicia-

ble. *120 West Fayette Street, LLLP v. Baltimore City,* 413
Md. 309, 356, 992 A.2d 459, 488 (2010). We further explained:

> A controversy is justiciable when there are interested par-
> ties asserting adverse claims upon a state of facts which
> must have accrued wherein a legal decision is sought or
> demanded. To be justiciable the issue must present more
> than a mere difference of opinion, and there must be more
> than a mere prayer for declaratory relief. Indeed, the
> addressing of non-justiciable issues would place courts in
> the position of rendering purely advisory opinions, a long
> forbidden practice in this State. A declaratory relief action
> that requests adjudication based on facts that have yet to
> occur or develop lacks ripeness and should be dismissed for
> failure to allege a justiciable controversy.

*Id.* at 356–57, 992 A.2d at 488 (internal quotation marks and
citations omitted).

Appellant has exercised a contractual option to purchase
property, and under that contract, the lease agreement, the
parties must negotiate a mutually agreeable purchase price,
or, if this is not possible, appoint appraisers to determine the
"fair market value of the land." The appraisers' determina-
tion of the property's fair market value would then establish
the property's purchase price. Given that the record re-
flects—and we have not ascertained any evidence to the
contrary—that the parties attempted to negotiate a purchase
price for the property but could not agree, we are persuaded
that the state of facts is such that the rights of the parties
should be determined now.

The parties' inability to agree stems from their contrasting
interpretations of the contractual phrase "fair market value of
the land," and this dispute would continue regardless of the
interpretation of that phrase by appraisers. Thus, we need
not be concerned that subsequent factual developments would
change the nature of the dispute or the respective rights of
the parties and, thereby, render our opinion advisory. *See
Hickory Point P'ship v. Anne Arundel County,* 316 Md. 118,
130, 557 A.2d 626, 632 (1989) (observing that courts are

prohibited from "declar[ing] the rights of parties upon a state of facts which has not yet arisen, [or] upon a matter which is future, contingent and uncertain" (internal quotation marks and citations omitted)).

Moreover, regardless of whether appraisers interpreted the lease agreement and determined under that interpretation the property's purported fair market value, the interpretation of the phrase "fair market value of the land" would remain a question of law ultimately to be decided by the courts. *See Clancy v. King*, 405 Md. 541, 556–57, 954 A.2d 1092, 1101 (2008) (describing the interpretation of a contract as a question of law). Were we to decline to consider the issue at this juncture, and the parties appointed appraisers to determine the lease agreement's meaning themselves, undoubtedly one of the parties would challenge that interpretation in the courts.

For these reasons, we are assured that the legal issue to be decided in this case is crystalized, and immediate resolution of this issue will terminate the parties' dispute. *See Hickory Point*, 316 Md. at 131, 557 A.2d at 632 ("The disagreement over which declaratory relief is sought must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." (internal quotation marks and citation omitted)); *see also Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 691, 526 A.2d 598, 602 (1987) (observing that "the purpose of the ripeness doctrine is to ensure that adjudication will dispose of an actual controversy in a conclusive and binding manner"). Accordingly, we conclude that the parties' request for relief arises out of an actual controversy and is therefore justiciable.

### III.

Appellant argues that the Circuit Court erred when it determined that "fair market value of the land" was intended to mean the value of an unencumbered fee simple estate because the court misapplied the doctrine of merger. Specifi-

cally, Appellant contends that the Circuit Court conflated the doctrine of legal merger with that of equitable merger. Appellant submits that the doctrine of equitable merger permits, upon the exercise of a tenant's option to purchase a leased estate, the merger of the tenant's lesser estate with the landlord's greater estate but only in the absence of express intent on the issue and if merger at that time is in the interest of the person acquiring both estates. Appellant argues, however, that the lease agreement provisions requiring the landlord, upon the tenant's exercise of the option to purchase, to convey the property "by a good and merchantable title to the [Appellant] free of liens and encumbrances" is not an expression of the parties' intent that equitable merger should take place before settlement. Such a phrase, Appellant asserts, is standard in "almost every contract for the purchase of real estate" and was intended to refer to mortgages, judgment liens, and real estate taxes.

Appellant also contends that this provision would be satisfied even if the two estates did not merge before settlement because, under the doctrine of legal merger, Appellant's encumbrance on the land, the lease, would terminate at the time the deed is recorded. Appellant contends, therefore, that the lease is silent on the issue of equitable merger and the courts should consider whether equitable merger is in Appellant's interest.

Appellant further contends that, if merger does not serve that interest, then the estates should not merge prior to recording the deed. Appellant asserts that equitable merger is against Appellant's interest because merger would deprive Appellant of the value of the lease and enable Appellees to convey their property at a value not attainable on the open market in which the property could only be sold subject to that lease.

Additionally, Appellant argues that, under the objective law of contract interpretation, which is the approach in Maryland, courts must interpret the contract in question in accordance with the plain meaning of the unambiguous terms without

concern for the parties' intent. Appellant argues that applying these principles in this case compels the conclusion that "fair market value of the land" is without ambiguity and construing that phrase to mean "the fair market value of the land ... as unencumbered by Tenant's lease thereon" is an impermissible addition of language to the contract. Moreover, Appellant contends that "fair market value" has a settled meaning in Maryland, which is the " 'price which an owner willing but not [obliged] to sell would accept for the property and which a buyer willing but not [obliged] to buy would pay therefor.' " (Quoting *Pumphrey v. State Roads Comm'n*, 175 Md. 498, 506, 2 A.2d 668, 671 (1938)). Appellant further contends that the sale hypothesized under this definition requires consideration of any encumbrances on the land, such as Appellant's lease.

Appellees respond that we need not consider the doctrine of merger because the parties' intent can be ascertained from the text of the lease agreement. Appellees argue that, to ascertain that intent, the Circuit Court properly took into account the circumstances of the option to purchase, meaning that the option would be exercised by a tenant who would ultimately own the entire fee simple estate, and that these circumstances were apparent in the lease. Moreover, Appellees argue that the contract is a lease and therefore inherently reflects the parties' intent to facilitate a sale between a landlord and tenant, not a sale to a third party. Appellees further argue that the meaning of "fair market value of the land" should be interpreted in conformance with that intent, which would contemplate the value of the entire estate rather than the landlord's reversionary interest.

As to the language of the contract, Appellees argue that, if the parties had intended to grant Appellant the option to purchase solely the landlord's reversionary interest in the property, the contract would so provide. Appellees further assert that, contrary to Appellant's argument, the provision requiring the landlord to convey the property "by a good and merchantable title" and "free of liens and encumbrances" indicates that the parties contemplated the extinguishment of

86

the tenant's leasehold estate upon exercise of the option. Appellees argue that the contention that such provisions are standard and generally refer to encumbrances other than leases is unavailing because a lease is an encumbrance and a vendor could not comply with the contract while selling property subject to a lease. Finally, Appellees argue that the language of the lease should be interpreted in accordance with its ordinary meaning, and the ordinary meaning of "fair market value of the land" is the fair market value of the unencumbered estate, not the fair market value of the reversionary interest in the land.

## IV.

"The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law," which we review de novo. *Clancy*, 405 Md. at 556–57, 954 A.2d at 1101 (internal quotation marks and citations omitted). We employ in Maryland an objective approach to contract interpretation, according to which, unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation. *Cochran v. Norkunas*, 398 Md. 1, 16, 919 A.2d 700, 709 (2007). This undertaking requires us to restrict our inquiry to "the four corners of the agreement," *id.* at 17, 919 A.2d at 710, and ascribe to the contract's language its "customary, ordinary, and accepted meaning." *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001) (internal quotation marks and citation omitted).

Rather than acquiescing to the parties' subjective intent, we consider the contract from the perspective of a reasonable person standing in the parties' shoes at the time of the contract's formation. *Cochran*, 398 Md. at 17, 919 A.2d at 710. Thus, " 'the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.' " *Id.*, 919 A.2d at 710 (quoting *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492

A.2d 1306, 1310 (1985)). The language of a contract is only ambiguous if, when viewed from this reasonable person perspective, that language is susceptible to more than one meaning. *United Servs. Auto. Assoc. v. Riley,* 393 Md. 55, 80, 899 A.2d 819, 833 (2006).

The Circuit Court determined that "the meaning of 'fair market value of the land only' as used in the Lease Agreement which grants [Appellant] a right to purchase the 'demised premises' . . . is clear and unambiguous." We agree. So too does Appellant. He argues, though, that "fair market value" is unambiguous because that phrase has an accepted meaning in Maryland: " 'the price which an owner willing but not obliged to sell would accept for the property and which a buyer willing but not obliged to buy would pay therefor.' " *Pumphrey,* 175 Md. at 506, 2 A.2d at 671. Indeed, we have employed that definition in cases in which the valuation of a certain piece of property was at issue. *See id.* at 512, 2 A.2d at 674; *see also Realty Improvement Co. v. Consol. Gas & Elec. Light & Power Co.,* 156 Md. 581, 587, 144 A. 710, 713 (1929) (addressing valuation of property in condemnation proceedings).

To employ that definition in this case, however, would be inconsistent with the language of the contract, which provides that Appellant, after the expiration of twenty years, "shall have the right and option to purchase" the property and, in the event that the parties cannot agree on the purchase price, that price "shall be the fair market value thereof at the time this option to purchase is exercised." The plain meaning of the word "shall" is that it imposes an obligation on Appellees to permit Appellant to purchase the property and ensures completion of the sale by providing that, if the parties cannot agree on the property's purchase price, that price will be fair market value. *See Eng'g Mgmt. Servs., Inc. v. State Highway Admin.,* 375 Md. 211, 234, 825 A.2d 966, 979 (2003) (observing that "the term 'shall' is presumed mandatory on the parties, denoting an imperative obligation inconsistent with the exercise of discretion" (internal quotation marks and citation omitted)).

██ Even assuming *arguendo* that the definition of fair market value set forth in *Pumphrey* is consistent with the language of the lease agreement, merely inserting that definition into the option to purchase provision does not dictate the proper interpretation of "fair market value of the property." We employ an objective approach to contract construction with the goal of interpreting the contract in a manner consistent with the parties' intent. *See Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). We achieve that objective by considering the plain language of the disputed provisions in context, which includes not only the text of the entire contract but also the contract's character, purpose, and "the facts and circumstances of the parties at the time of execution." *Id.*, 488 A.2d at 488.

Thus, even though "the fair market value of the land" may on its face be defined as the price which an owner willing but not obligated to sell would accept for the property and which a buyer willing but not obligated to buy would pay for it, that definition must be considered within the context of the lease agreement and the circumstances under which it was executed. The option provision at issue states that, in the event the *"Landlords and Tenant"* cannot agree to a purchase price, "[t]he purchase price for the land shall be the fair market value thereof at the time this option to purchase is exercised." (Emphasis added). The option provision further states that "[t]his option shall be exercised by the giving of written notice to the *Landlords of the intention of Tenant"* and, "[u]pon payment of the unpaid purchase money, a Deed for the property containing covenants of special warranty and further assurances shall be executed *at Tenant's* expense, which deed shall convey the property by a good and merchantable title *to the Tenant* free of liens and encumbrances." (Emphases added). These provisions indicate an intent to facilitate a sale between the tenant and the landlords of the property subject to the lease, not between parties who are, but for their dealing with the property in question, strangers to each other.

Because the relevant provisions of the lease agreement contemplate a transaction between a landlord and a tenant

rather than an ordinary property owner and potential buyer, these provisions indicate that the parties contemplated a transaction in which the property is sold free of the tenant's encumbrance thereon. We need not resort to legal concepts, such as equitable and legal merger, to reach this conclusion. *See Calomiris v. Woods,* 353 Md. 425, 443, 727 A.2d 358, 366–67 (1999) (explaining that, when issues related to a contract's interpretation may be resolved by referring to the language of the contract, we need not look to external legal principles). Again, construing the lease agreement from an objective perspective, a reasonable tenant, relying on common sense, would understand that the option to purchase entitled him to purchase outright the entire property, free of encumbrances. Likewise, a reasonable landlord, relying on common sense, would understand that his obligation to sell would terminate completely his interest in the property.

Furthermore, because the option to purchase would relieve the tenant of this financial burden and terminate the landlord's right to earn income on his property, the only reasonable interpretation of "fair market value of the land only" as it appears in the option-to-purchase provision of the lease agreement in question is one that charges the tenant for the rights gained, and compensates the landlord for the rights lost, in the transaction. Without resort to legal principles, a reasonable tenant understands that purchasing the property he leases will terminate his obligation to pay rent and entitle him to the full bundle of rights attendant to property ownership. Similarly, a reasonable landlord understands that granting a tenant an option to purchase the property he leases will terminate his right to earn income on the property but enable him to realize the property's full value as unencumbered at that time, rather than slowly earning income on the property over time. Nothing in the contract indicates that the parties contemplated a type of sale other than that which we have just described.

Further consideration of the contract supports our conclusion that the parties contemplated a sale in which Appellant would compensate Appellees for the full value of the property rather than merely for Appellees' reversionary inter-

est. As Appellees point out, the option to purchase expressly provides that Appellees shall convey to Appellant the land "free of liens and encumbrances." Appellant urges us to disregard this provision as inapplicable to leases on the property because such language is standard in these types of agreements. Our rules of contract construction require us, however, to "avoid interpreting contracts so as to nullify their express terms." *Calomiris*, 353 Md. at 441, 727 A.2d at 366; *see also Clancy*, 405 Md. at 557, 954 A.2d at 1101 ("[E]ffect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." (internal quotation marks and citation omitted)). Furthermore, when the language of a contract is unambiguous, such as in this case, we must "presume that the parties meant what they expressed." *See Calomiris*, 353 Md. at 436, 727 A.2d at 363 (citation omitted). We see no reason to interpret this provision in a way inconsistent with its plain meaning when, under the construction we have just outlined, its meaning may be interpreted in harmony with that of "fair market value of the land." Therefore, we conclude that "fair market value of the land," as that phrase appears in the lease agreement between Appellant and Appellees, refers to the fair market value of the property as unencumbered.

## V.

For the foregoing reasons, we hold that the lease agreement between Appellant and Appellees is unambiguous and, further, that the phrase "fair market value of the land," as it appears in the option to purchase provision of that lease agreement, means the fair market value of the land unencumbered by Appellant's lease. Accordingly, we affirm the judgment of the Circuit Court for Worcester County.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

HARRELL and BATTAGLIA, JJ., Dissent.

HARRELL, J., dissenting, which BATTAGLIA, J., joins.

I dissent. The propriety and ripeness for judicial resolution (through declaratory judgment) of the disputed question that the parties wish us to resolve is not as apparent to me as it is to the Majority. The consideration of whether the fair market value of the land only is affected by the existing lease between the parties was committed by the parties, through their written agreement, to a non-judicial forum, a panel of appraisers. If the first two appraisers, both Real Property members of the American Society of Appraisers ("ASA"), one each appointed by the respective parties, disagree on the answer to the pertinent question, and presumably on the ultimate value of the land (as undoubtedly they will if each party instructs its or her appraiser consistent with their views expressed in this litigation), they must select a third ASA appraiser who will break the deadlock and his/her decision will bind the parties. That is the end of this "case" and the dispute between these parties. This is what the parties agreed as a private dispute resolution process. The judicial system has no business in this matter.

No effort was made by the parties to construct a record before the trial court as to what any member of the ASA would be obliged to consider on the facts of this case in formulating "fair market value," the kind of decision that is the mother's milk of most real property valuation tasks. Perhaps there would have been no disagreement between the two appraisers, but, assuming there was, the third appraiser (who the parties did not select and whose judgment they must accept) would have settled the hash. I have a difficult time imagining that whether an existing lease figures in the valuation of land, as between parties to an option to purchase who might be similarly situated to those in the present case, has not been confronted before now by veteran appraisers. The parties chose to leave it to the appraisers, and so would I. I would hold the parties to their bargain, vacate the judgment of the Circuit Court, and direct that court to dismiss the suit.

Judge BATTAGLIA authorizes me to state that she joins in the views expressed in this opinion.