14 A.3d 1257

CAPITAL SELECT REALTORS, LLC, et al.

v.

NRT MID–ATLANTIC, LLC, et al.

No. 2373, Sept. Term, 2009.

Court of Special Appeals of Maryland.

March 2, 2011.

John B. Bratt (Miller & Zois, LLC, on the brief), Glen Burnie, for appellant.

Jennifer B. Speargas, Ellicott City, for appellee.

Panel: MEREDITH, MATRICCIANI, and FREDERICK J. SHARER, (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellees, NRT Mid–Atlantic, LLC ("NRT"), Bonnie Camarata, and Dennis Roarty, filed a petition to confirm an arbitration award in the Circuit Court for Worcester County on February 12, 2009, naming as defendants the three appellants, Capital Select Realtors, LLC ("Capital Select"), Hyongjin Oh, and Chong Barden. The court heard the matter and issued an "Order of Confirmation and Judgment" on November 18, 2009. Appellants filed a timely notice of appeal on December 14, 2009.

## QUESTIONS PRESENTED

Appellants present a single question for our consideration, which we have reworded, for clarity:

Did the trial court err when it granted appellees' petition to confirm the arbitration award and entered judgment in favor of appellees and against appellants in the amount of $14,475.00?

For the reasons set forth below, we answer yes. We therefore reverse the judgment of the circuit court and remand this case for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

All parties to these proceedings are members of the Coastal Association of Realtors of Maryland, Inc. ("CAR"), and by virtue of their membership agreed to submit to arbitration any disputes arising among them and out of the real estate business. A "Request and Agreement to Arbitrate," dated December 12, 2006, and filed with CAR, sets forth the following statement of the dispute, on behalf of appellees:

A dispute ... exists between me (or my firm) and (list all persons and/or firms you wish to name as respondents to this arbitration):

The form then sets forth the names of the three appellants, Hyongjin Oh, Chong Barden, and Capital Select, in blank spaces provided. The designation "Realtor Principal" appears next to the names of both Oh and Barden.

The form continues by reciting that "[t]here is due, unpaid, and owing to me (or I retain) from the above-named persons the sum of $14,475.00." [1]

At the end of the form, the space for "Complainant(s)" contains the name "Bonnie Camarata" and her signature, as well as the name of her firm, NRT.[2]

---

1. The amount in dispute is hand-written on the form.

2. The form lists "Coldwell Banker Residential Brokerage." This evidently refers to NRT, which was doing business under that name at all

A "Response and Agreement to Arbitrate," dated January 25, 2007, lists a sole "respondent," Chong Barden—the response's only signatory—and names a sole complainant, "Bonnie Camarata." The response confirms the existence of a dispute in the same amount, alleging that "[t]here is due to me the sum of $14,475.00." [3] The form also states: "I agree to abide by the arbitration award and to comply with it promptly."

The response contains an attachment, entitled "Written Notice of Legal Counsel," which states, in its entirety:

All interests of Chong Barden, Capital Select Realtors, LLC, and any affiliates or associates thereof shall be represented by the law firm of WESCOTT ROWE, LLP for the purposes of arbitration in the matter of Bonnie Camarata v. Chong Barden.

> WESCOTT ROWE, LLP
>
> Attorney: Robinson S. Rowe, Esq.
>
> [Address and Phone]

At the conclusion of arbitration proceedings, the arbitrators provided the parties with a form titled "Award of Arbitrators," signed by the three arbitrators. The award states:

The undersigned, duly appointed as the Hearing Panel to hear and determine an arbitrable dispute between Bonnie Camarata and Hyongjin Oh, certify that on August 17, 2007, we heard the evidence of the parties and having heard all the evidence and arguments of the parties, a majority of the panel finds there was due and owing $14,475.00 to be paid by Hyongjin Oh to Bonnie Camarata, which shall be paid within 10 days from the award becoming final.

After the arbitrators promulgated their award, the CAR convened a procedural review panel at Oh's request. On August 27, 2008, the panel issued a "Decision of the Procedur-

---

relevant times. Dennis Roarty does not appear as a named complainant.

3. The amount, again, is hand-written.

al Review Hearing Tribunal." The decision states that it was requested by Hyongjin Oh in the matter of "*Bonnie Camarata (Dennis Roarty) v. Hyongjin Oh,*" and that the panel affirms "the award of the arbitration Hearing Panel," without comment. The panel sent a copy of the decision to Chong Barden on behalf of Capital Select, along with a letter that states:

Re: Decision of Procedural Review Hearing

Camarata/Roarty v. Oh/Barden

June 27, 2008

Enclosed pleased find Form # A–141—Decision of the Procedural Review Hearing Tribunal for the above referenced Procedural Review Hearing.

Per the decision, the hearing panel has affirmed the award of the arbitration hearing Panel. Therefore, the deadline for payment of the award granted in the original arbitration hearing decision is due to Dennis Roarty of Coldwell Banker Residential Brokerage 10 days from the date of this notice.

Thank you for your cooperation and participation in this process.

On February 12, 2009, appellees filed a petition to confirm the arbitration award in the Circuit Court for Worcester County, naming the three appellants as defendants in the matter: Capital Select, Hyongjin Oh, and Chong Barden. The petition alleged, in pertinent part:

3. At the conclusion of the hearing, the Award was issued ordering Defendants to pay to Plaintiff the sum of $14,475.00. *See* **Exhibit 3** (Award of Arbitrators)[.]

\* \* \*

4. Respondents requested procedural review of the Award. A Procedural Review Hearing was conducted at CAR's headquarters in Berlin, Maryland on June 27, 2008. Plaintiff Dennis Roarty represented [NRT] and Defendant Chong Barden represented Capital [Select] at the Procedural Review Hearing....

5. Payment was due to Plaintiff within ten (10) days of June 27, 2008. As of the date of this filing, despite numer-

ous written and oral requests to Respondents' counsel, payment has not been made.

\* \* \*

7. The time has expired for a party to the Arbitration to request that the Award be modified or corrected, pursuant to Md.Code Ann., Cts. & Jud. Proc. § 3–223. Likewise, the time for a party to request that the Award be vacated, pursuant to Md.Code Ann., Cts. & Jud. Proc. § 3–224, has also expired.

8. Accordingly, and pursuant to Md.Code Ann., Cts. & Jud. Proc. §§ 3–227 and 3–228, the Award is presented to this Court for an Order of Confirmation, and entry of judgment in favor of Plaintiff in the amount of $14,465, plus attorneys' fees and costs.

WHEREFORE, Plaintiffs pray that this court enter an Order of Confirmation of the Award and judgment in favor of the Plaintiffs in the form of the Order attached hereto.

Appellants moved to dismiss the petition,[4] and the court heard both the motion to dismiss and the merits of the underlying petition to confirm on November 18, 2009. Appellants argued that appellees' requested relief was actually in the form of a petition for modification or correction of the award, which was time-barred, so that the court's only recourse would be to confirm the award and enter a judgment solely against Oh and solely in favor of Camarata.

Appellees argued that all three appellants are liable for the award. First, appellees argued that the appellants are liable because, as members of CAR, they agreed to be bound by a code of ethics that, as set forth in a manual submitted as evidence, includes "the obligation of Realtors (principals) to

---

4. Appellees proffered both in circuit court and on appeal that the motion to dismiss marks the first time appellants asserted that the award provided relief against Hyongjin Oh only. The limited record in this case does not contain a transcript or other documentation of the "procedural review" that could verify appellees' contention (other than the above letter and decision sent to Barden on behalf of Capital Select, which does not encapsulate any arguments).

cause their firms to arbitrate and be bound by any award."
Appellees further argued that all three appellants are liable
under the award because they were named in the request to
arbitrate, they participated in arbitration, they were not dis-
missed, and because the name "Hyongjin Oh" was merely
"shorthand" that referred to appellants, collectively.

Counsel for appellants proffered that he initiated review by
the tribunal only on behalf of Oh, and that Barden and Capital
Select testified during the tribunal review proceedings "on
behalf of Mr. Oh," arguing that the award had been the
product of a "procedural error."

Appellees proffered that they did not seek to clarify or
modify the award because "none of the parties at the time
interpreted it in the way that [appellants are] now arguing it
to be interpreted before this Court." Appellees referred to
the aforementioned documentary evidence, as well as the fact
that Barden and Capital Select participated in the tribunal
review proceedings. Appellees also proffered that, because
fees are "commonly paid by the firm and not by the individual
in response to an award," that the use of Oh's name, alone,
was "shorthand," and that the arbitrators and parties under-
stood that the award was intended to bind all three of the
appellants.

The trial court decided to deny appellants' motion to dismiss
and entered an order as requested by appellees, explaining its
ruling thusly:

... Capital Select Realtors, LLC, and Chong Barden's
motion to dismiss with prejudice is denied. The reason
being that I think it was just simply an error that only one
name was included. To me, it doesn't make a bit of sense in
the world that a judgment would only be granted against
the one plaintiff and against the one defendant, and then the
one that appeals are the two who won. I just can't get that
out of my head. Yes, it would have been a whole lot better
had they followed Rule 3–223 to correct or modify an award.
You know, that could have been filed right here. . . .

Appellants asked the trial court to clarify its ruling, as follows:

[APPELLANTS]: Judge, because we are going to review, I would ask the Court to clarify for the record, there's been no motion or petition filed by the plaintiff asking the Court to modify the award and add the defendants' names to it. By your order now that you're confirming this, you're only confirming the actual face of the award itself. So are you, in effect, modifying the award to include two additional defendants now?

[THE COURT]: I think that's what I just did.

[APPELLANTS]: Okay.

[THE COURT]: ... I don't think there's any escaping that.

\* \* \*

I truly believe that a review of this whole record shows that the award was in favor of all three, against all three. Your clients knew that. That's why they appealed it or that's why they went and testified, I should say to clear that up, when there was no reason. It just doesn't make sense why they would do that. And for the very first time ever it's raised now.

Following the hearing, the court issued the following order and judgment:

ORDERED that Judgment shall be entered in favor of Plaintiffs NRT Mid–Atlantic LLC d/b/a Coldwell Banker Residential Brokerage, Bonnie Camarata and Dennis Roarty, and against Defendants Capital Select Realtors LLC and Chong Barden, in the amount of Fourteen Thousand Four Hundred and Seventy–Five Dollars ($14,475.00).[5]

Appellants filed a timely appeal on December 14, 2009.

---

5. The court omitted Hyongjin Oh from its judgment because he was not served with process.

DISCUSSION

## A. The Maryland Uniform Arbitration Act

Arbitration in Maryland is subject to the Maryland Uniform Arbitration Act ("the Arbitration Act" or "the Act"), Maryland Code (1974, 2006 Repl. Vol.), §§ 3–201 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.").

Section 3–219(a) of the Act provides that "[t]he arbitration award shall be in writing and signed by the arbitrators who joined in the award[,]" and subsequent sections of the Act provide for judicial review under certain circumstances.

Section 3–222 of the Act provides to an aggrieved party the right to petition *the arbitrators* to modify or correct the award within twenty days of its delivery, while Section 3–223 provides a parallel right to petition *the court* within ninety days of the award's delivery. The aggrieved party may petition the arbitrators directly "for the purpose of clarity," C.J. § 3–222(c)(2), and may petition either the arbitrators or the court for modification or correction on three other grounds:

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

C.J. §§ 3–222(c)(1), 3–223(b).

An aggrieved party may also seek, in the alternative, to have the court vacate the arbitration award if it is affected by some fundamental defect, namely:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213 of this subtitle, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement as described in § 3–206 of this subtitle, the issue was not adversely determined in proceedings under § 3–208 of this subtitle, and the party did not participate in the arbitration hearing without raising the objection.

C.J. § 3–224(b).[6]

If the court grants a party's petition to modify or correct the award, then "the court shall modify or correct the award to effect its intent and confirm the award as modified or corrected[,]" C.J. § 3–223(c).[7] "Otherwise, the court shall confirm the award as made." *Id.*

Of course, a party need not be aggrieved by the arbitrators' award and may nevertheless seek the court's aid because the opposing party has failed to comply with the award. In that case, a party may petition the court, under C.J. § 3–227, to confirm the award.[8] The court is obligated to confirm the award "unless the other party has filed an application to

---

**6.** The right to petition for vacation generally expires thirty days "after delivery of a copy of the award to the petitioner," except that a petition alleging "corruption, fraud, or other undue means" expires thirty days after the grounds "become known or should have been known to the petitioner." C.J. § 3–224(a).

**7.** If a petition before the arbitrators is pending, they must comply with the court's order. C.J. § 3–222(d).

**8.** Section 3–227 does not place a time limit on petitions to confirm.

vacate, modify, or correct the award within the time provid-
ed[.]" C.J. § 3-227(b).

## B. Interpretation

The Court of Appeals recently summarized the general
strategy of statutory interpretation and construction in *Crof-
ton Convalescent Ctr., Inc. v. Dep't of Health & Mental
Hygiene*, 413 Md. 201, 216, 991 A.2d 1257 (2010):

> The cardinal rule of statutory interpretation is to ascer-
> tain and effectuate the intent of the Legislature. Statutory
> construction begins with the plain language of the statute,
> and ordinary, popular understanding of the English lan-
> guage dictates interpretation of its terminology. When a
> statute's plain language is unambiguous, we need only to
> apply the statute as written, and our efforts to ascertain the
> legislature's intent end there.

(Internal citations and quotation marks omitted.)

As to the Arbitration Act's purpose, Judge Thieme, writing
on behalf of this Court, explained the benefits of arbitration in
*Birkey Design Group v. Egle Nursing Home*, 113 Md.App.
261, 265, 687 A.2d 256 (1997):

> Arbitration is an informal, expeditious, and inexpensive
> alternative to conventional litigation. Arbitration eases the
> burden on clogged court dockets; it offers parties an oppor-
> tunity to submit disputes to one experienced in that field of
> business. Furthermore, arbitration originates from an
> agreement between the parties as to how and in what forum
> the parties will settle their disputes. For these reasons,
> arbitration is encouraged; accordingly, the scope of judicial
> review of an arbitrator's award is limited.

(Internal citations omitted.)

In *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md.
31, 43, 720 A.2d 912 (1998), the Court of Appeals quoted the
Supreme Court of Arizona to explain that finality is one of the
Act's primary concerns:

> The interpretations of our sister states also promote the
> public policy of encouraging early payment of valid arbitra-

tion awards and the discouragement of nonmeritorious pro-
tracted confirmation challenges. The prefatory comment to
the 1954 draft of the Uniform Arbitration Act stated that
court intervention in arbitration "must be prompt and sim-
ple or the values of arbitration will be largely dissipated
through prolonged litigation."

*Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 180 Ariz. 148,
153–54, 882 P.2d 1274 (Ariz.1994) (quoting Handbook of the
National Conference of Commissioners on Uniform State
Laws 204 (1954)). *See Birkey,* 113 Md.App. 261 at 269, 687
A.2d 256 (citing *Board of Educ. v. Prince George's County
Educators' Ass'n,* 309 Md. 85, 98, 522 A.2d 931 (1987)) ("The
goal in arbitration is to make an arbitration award the end,
rather than the commencement, of litigation.").

### C. Analysis

The fundamental dispute in this case is simply whether
the language used in the arbitration award referred only to Oh
or referred collectively to the three appellants, including Capi-
tal Select and Barden. That dispute, however simple in
theory or statement, is complicated by the nature of judicial
review under the Arbitration Act.

Appellees argue that the trial court properly "confirmed"
the award by examining the arbitration proceedings and dis-
cerning the arbitrators' intent, as was its duty under C.J. § 3–
227. A proper reading of that section, however, reveals that
the court did not "confirm" the award, but rather modified or
corrected it. As this was done without appellees' having
complied with any of the procedural prerequisites of C.J.
§§ 3–223 or 3–224, we shall vacate the trial court's order and
remand the case for further proceedings.

When construing the Act, we must bear in mind that
the legislative intent behind it clearly favors arbitration and,
as discussed above, favors a policy that brings arbitration to a
fair and expeditious resolution. That being the case, it ap-
pears to us that the requirement in C.J. § 3–219 that an
award be "in writing" is motivated by considerations under-

girding contract law such as objective interpretation and the parol evidence rule. Such rules are designed to prevent disputes by encouraging parties to describe their arrangements for future reference.[9] And while a certain amount of ambiguity inheres in all language, we inquire as to particular intentions only when the employed language is objectively ambiguous:

> We employ in Maryland an objective approach to contract interpretation, according to which, unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation. *Cochran v. Norkunas,* 398 Md. 1, 16, 919 A.2d 700, 709 (2007). This undertaking requires us to restrict our inquiry to "the four corners of the agreement," *id.* at 17, 919 A.2d at 710, and ascribe to the contract's language its "customary, ordinary, and accepted meaning." *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194, 199 (2001) (internal quotation marks and citation omitted).

---

**9.** Parties will naturally seek to deviate from a writing's objective meaning if it is advantageous to do so after a disagreement arises. But the legal policy of objective interpretation is founded on public agreement as to *ex ante* goals:

> Both theory and available evidence suggest that parties would prefer a regime that strictly enforces formal contract doctrine (unless they have expressly indicated their intent to delegate hindsight authority to a court) over a default rule that automatically subordinates formal contract doctrine to ex post judicial revision. By eliminating the risk that courts will erroneously infer the parties' preference for ex post judicial intervention, such a regime increases the reliability of formal contract terms and enhances the parties' control over the content of their contract. That control, in turn, permits sophisticated commercial parties to implement the most efficient contract design strategies available to them.

Jody S. Kraus and Robert E. Scott, "Contract Design and the Structure of Contractual Intent," 84 N.Y.U.L. Rev. 1023, 1028 (2009) (footnote omitted). *See also* Richard H. Weisberg, "Wigmore and the Law and Literature Movement," 21 Cardozo Stud. L. & Lit. 129, 139 (2009) ("[T]he parol evidence rule is perceived to be predicated not on the transparency of language but rather on a technique of interpretation responsive to common evidentiary situations and—above all—to the need to create incentives for careful draftsmanship.").

*Ocean Petroleum, Co. v. Yanek,* 416 Md. 74, 86, 5 A.3d 683 (2010).

The law thus encourages parties to use language as precisely as possible, so as to forestall costly inquiries into their subjective intentions. Similarly, the Act requires a written award to describe the arbitrators' decision. In fact, the Act allows even more leeway than the objective theory of contract interpretation or the parol evidence rule because the Act specifically allows a party to seek to clarify or alter the award's language *at either party's election. See* C.J. § 3–222 or § 3–223. Thus, if either party believes that the award's language differs from the arbitrators' intentions—and if they can successfully persuade the court of the same—then "the court shall modify or correct the award *to effect its intent* and confirm the award as modified or corrected. Otherwise, the court shall confirm the *award as made.*" C.J. § 3–223(c).

The language of C.J. § 3–223 therefore anticipates the present situation, in which one party believes that the arbitrators' written award does not objectively reflect their intended resolution of the dispute. That being the case, the Act permits the court to modify or correct the award only if a party petitions for that relief under C.J. § 3–223, which must be done within a fixed time.[10] Taken as a whole, the Act's clear implication is that, if no petition to modify or correct is

---

**10.** We note that C.J. § 3–223(b)(1) also anticipates modification or clarification if the award contains "an *evident* mistake in the description of any person, thing, or property referred to in the award" (emphasis added).

Given the Act's emphasis on speedy resolution and minimal court interference, it appears that a mistake would only be "evident" if it is facially inconsistent or otherwise contradicts some judicially noticeable fact. *See* Rule 5–201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). Although appellees hinted at judicial notice in their argument at trial, this argument was not made on appeal, and in any event, the facts that they tendered for judicial notice do not appear to be the type envisaged by Rule 5–201.

made, then the court must confirm the award under C.J. § 3–227.[11]

Finally, appellees' liken this case to *Birkey*, mentioned above, but their analogy fails. Appellees argue that appellants should not be rewarded for acting opportunistically, and so cite the following passage:

> Birkey ... stood mute, despite a statute providing for clarification. Birkey should not benefit from its conscious decision to forgo clarification of the award on the unreasonable expectation that it would obtain a favorable result from a clairvoyant appellate panel.

*Id.* at 269, 687 A.2d 256.

Opportunistic behavior was among our concerns in *Birkey*, but it does not appear to have been a necessary part of the holding, and in any event, equitable considerations cannot control our decision here. While it appears that appellants may have acted opportunistically in this case, it must equally be said that appellees have failed to pursue their rights with vigilance. If a plaintiff fails to file a viable suit within the statute of limitations, we do not penalize the defendant by forcing him or her to defend the suit. Where a statute, rule, or other law sets forth procedural restrictions, it does so because the public interest demands a fair and efficient resolution of the conflict. In that vein, and as seen above, the Arbitration Act severely limits judicial review of arbitration awards so as to encourage their use as a primary and final means of dispute resolution without courts prying into each arbitration proceeding. Thus, in *Birkey*, we explicitly held that "a party waives the right to argue that an arbitrator's award is unclear if a party fails to file a petition for clarifica-

---

11. Even if the award perfectly captures the arbitrators' intent, the petitioned court may nevertheless be unable to effect that intent through confirmation and judgment because of limits on the court's jurisdiction. Such was the case, here, where the court failed to obtain personal jurisdiction over Hyongjin Oh.

Naturally, jurisdictional limits can only *narrow* the scope of an award and so cannot be used to extend the award to unnamed parties, as in this case.

tion." 113 Md.App. at 271, 687 A.2d 256. And while appellees might maintain that they have only ever argued to "confirm" the arbitrators' award in this case, the forgoing discussion clearly shows that they sought—and the trial court undertook—to modify or clarify the award by scrutinizing the arbitration proceedings and altering the written award. If we are to abide by legislative intent, and we must, then this cannot be done except by valid and timely petition to modify or clarify.

Although we sympathize with the trial court's desire to effectuate the arbitrators' presumed intent, the Act requires us to place economy and process ahead of concerns that one party, however innocently, failed to comply with mandatory rules of procedure designed to promote regularity and fairness.[12] For the forgoing reasons, we vacate the trial court's judgment and remand the case for further proceedings consistent with this opinion.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**

---

**12.** We note that although our holding exempts appellants from monetary liability, they may be subject to disciplinary proceedings before the Maryland Real Estate Commission for unlawfully or unethically withholding the disputed broker's fee. *See* Maryland Code (1989, 2004 Repl. Vol.), § 17–322 of the Business Occupations and Professions Article; *see also* COMAR 09.11.02.03(B) ("The licensee shall cooperate with other brokers on property listed by the licensee exclusively whenever it is in the interest of the client, and share commissions on a previously agreed basis. Negotiations concerning property listed exclusively with one broker shall be carried on solely with the listing broker.").

Finally, it has not escaped our attention that certain of appellants' arguments before this court could imply that they were more than just omitted from the *award* and were, in fact, not parties to the arbitration *proceedings* (according to whatever standards the arbitration agreement entails). As such, appellants may yet be asked to answer in future arbitration, if the time has not expired for appellees to have them do so.